# United States Court of Appeals
## For the First Circuit

No. 11-1880

CARLOS P. GONZÁLEZ-MALDONADO; ANNETTE ACEVEDO-HERNÁNDEZ;
CONJUGAL PARTNERSHIP GONZÁLEZ-ACEVEDO,

Plaintiffs, Appellants,

v.

MMM HEALTHCARE, INC., a/k/a Medicare y Mucho Más, a/k/a MMM;
PMC MEDICARE CHOICE, INC., a/k/a PMC;
MEDICAL MANAGEMENT SERVICES ORGANIZATION, INC., a/k/a MSO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before
Boudin, Hawkins[*] and Thompson,
Circuit Judges.

Nicolás Nogueras-Cartagena and Nogueras Law & Associates on brief for appellants.
Harry Anduze-Montaño and José A. Morales-Boscio on brief for appellees.

September 7, 2012

---

[*]Of the Ninth Circuit, sitting by designation.

**BOUDIN**, **Circuit Judge**.  Two physicians who contract with HMOs refused to accept capitation payments in place of fee-for-service payments, so the HMOs dropped the physicians' contracts. The physicians brought constitutional and antitrust claims against the companies, which the district court rejected on a motion to dismiss.  The physicians now appeal.  We describe briefly the underlying events alleged in the complaint.

Appellant Carlos P. González-Maldonado and his wife, appellant Annette Acevedo-Hernández, are licensed physicians with private medical offices in southeast Puerto Rico in Guayama and Patillas, respectively.  Acevedo is a primary care physician, and Gonzalez is a specialist in family medicine.  Appellants also perform house calls and provide services at several geriatric centers and hospitals in southeast Puerto Rico.  Most of appellants' patients are elderly and participate in Medicare Part A and Part B.

Appellees MMM Healthcare, Inc. ("MMM") and PMC Medicare Choice, Inc. ("PMC") are health management organizations, popularly called HMOs, which in this instance provide health care to Puerto Rican seniors enrolled in Medicare; and appellee Medical Management Services Organization, Inc. ("MSO") provides management support to health care providers including MMM and PMC.  The Center for Medicare and Medicaid Services ("CMS"), a federal agency, contracts

with MMM and PMC to provide health care to Medicare enrollees, for which CMS gives MMM and PMC a monthly payment for each enrollee.

In 2005 or earlier, the appellants entered into contracts with MMM and PMC, under which appellants agreed to provide health care services to MMM's and PMC's enrollees on a fee-for-services basis, that is to say, payments based for each of the medical services provided (e.g., annual physical; blood tests). MMM and PMC provide over eighty percent of the health care coverage to Medicare beneficiaries in southeast Puerto Rico, and over seventy-five percent of appellants' income derived from invoices to MMM and PMC for services to their enrollees.

MMM, PMC, and MSO are sister corporations, all three being wholly owned subsidiaries of MMM Holdings, Inc., according to an unsworn statement under penalty of perjury (pursuant to 28 U.S.C. § 1746 (2006)) issued by the secretary of the board of MMM Holdings, Inc. The statement, which was appended to the appellees' reply to the plaintiffs' opposition to motion to dismiss, is not countered by any proffer or specific information from the appellants.[1]

The current dispute stems from the appellees' decision to change the form of payment for appellants, and presumably other

---

[1]MMM Holdings Inc. appears to be a subsidiary of Aveta Inc., http://www.aveta.com/news/aveta-subsidiary-mso-of-puerto-rico-announces-acquisition-of-castellana-physician-services/ (June 1, 2012). This supplementary information is for context and is not part of our rationale.

doctors, from fee-for-services to a regime known as capitation, under which appellants would receive a fixed sum per patient per year. Around March 2008, the appellees gave the appellants a proposed contract extension with MMM and PMC that would follow a capitation payment system. MSO also contacted Gonzalez and asked him to join MSO's health service provider group for southeast Puerto Rico, which entailed conditions that included the capitation payment system.

Gonzalez and Acevedo refused to sign the new contracts or to join MSO; instead, they continued to bill the appellees on a fee-for-services basis. In April 2008, Gonzalez received a letter from MSO dated April 1, 2008, saying that Gonzalez and Acevedo could no longer treat MMM and PMC enrollees at southeast Puerto Rico hospitals unless they joined MSO. The appellees likewise refused to honor invoices after April 1, 2008, on a fee-for-services basis. MMM and PMC contacted their enrollees who Gonzalez treated to inform them that he could no longer treat them at hospitals under their plans. On September 30, 2008, MMM and PMC notified appellants they would cancel their service provider contracts effective December 31, 2009, because the appellants had refused to agree to a capitation contract or to join MSO.

On March 2, 2010, appellants filed a complaint in the district court setting forth claims under section 1 of the Sherman Act, 15 U.S.C. § 1 (2006), various provisions of and regulations

-4-

under the Social Security Act, 42 U.S.C. § 301 et seq. (2006), and various provisions of Puerto Rico commonwealth law. In an amended complaint, the appellants added claims for violation of procedural due process and equal protection under the Fifth Amendment, violation of First Amendment free assembly rights, and monopolization under section 2 of the Sherman Act, 15 U.S.C. § 2.

The appellees filed a motion to dismiss, Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and in a decision filed on January 25, 2011, the district court dismissed all federal claims on the merits; the Puerto Rico law claims were then dismissed for lack of subject matter jurisdiction, there being no remaining federal claims to support supplemental jurisdiction (nor any claim of diversity jurisdiction). Appellants now appeal, limiting their brief to the equal protection and free assembly claims and the claim under section 1 of the Sherman Act.

We review the dismissal of the complaint de novo, Auto. Indus. Pension Trust Fund v. Textron Inc., 682 F.3d 34, 37 (1st Cir. 2012), assuming the factual allegations of the complaint to be true, Grajales v. Puerto Rico Ports Authority, 682 F.3d 40, 44 (1st Cir. 2012). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Constitutional Claims. The appellants make two constitutional claims: that the appellees have discriminated against non-MSO members in violation of the equal protection component of the Fifth Amendment's Due Process Clause,[2] and that barring them from practicing at certain hospitals has abridged their First Amendment right of free assembly. It is a condition of the constitutional claims that the appellees' actions qualify as governmental action.[3]

Most constitutional protections of rights and liberties are aimed at governmental action and not private conduct. Chemerinsky, Constitutional Law 519 (4th ed. 2011); e.g., U.S. Const. Amend. I ("Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble") (emphasis added); id. Amend. XIV, § 1 ("nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws") (emphasis added). The requirement of governmental action has a

---

[2]The Equal Protection Clause of the Fourteenth Amendment applies only to state governments, but the Due Process Clause of the Fifth Amendment is treated as containing an equal protection component that binds the federal government in the same way that the Equal Protection Clause binds the states. See Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 217 (1995).

[3]The phrase "state action" is ordinarily employed; but here it is the association of the appellees with federal government action that is in issue. The "governmental action" requirement applies to Fifth Amendment equal protection claims just as it does to Fourteenth Amendment claims. See S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 542 & n.22 (1987).

long history in the case law. See Civil Rights Cases, 109 U.S. 3 (1883).

Under limited circumstances, conduct by nominally private actors can be characterized as governmental action for constitutional purposes, e.g., Marsh v. Alabama, 326 U.S. 501 (1946) (company town), although the conditions delineated in a number of Supreme Court decisions over many years are not easily reduced to a single formula. Principal categories in which private actors may be deemed "governmental" and implicate a host of constitutional protections include the following:

> -where a private entity exercises "powers traditionally exclusively reserved" to the government, Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974);

> -where there is a "sufficiently close nexus" between the challenged activity and government regulation or support such that "it can be said that the [government] is responsible for the specific conduct of which the plaintiff complains," Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (quoting Jackson, 419 U.S. at 351); and

> -where government actors possess such influence over a nominally private entity that there exists "public entwinement in the management and control" of the entity, Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 297 (2001).

None of these exceptions applies in this case, nor does any other cited to us or of which we are aware. Governments often do provide health care, as in hospitals operated by the Department of Veterans Affairs; but the public function exception applies to

"traditionally _exclusively_" public functions. Jackson, 419 U.S. at 352 (emphasis added). Thus, running a utility company, id. at 353, or running a school, Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982); Logiodice v. Trustees of Me. Cent. Inst., 296 F.3d 22, 26 (1st Cir. 2002), cert. denied, 537 U.S. 1107 (2003), do not qualify. Neither does operating an HMO.

As for "nexus" and "support," appellants' amended complaint contains vague allegations that the appellees contract for and "manage federal funds," but neither government regulation standing alone, Jackson, 419 U.S. at 350, nor government funding, Rendell-Baker, 457 U.S. at 840, converts a private entity into an arm of the state--absent proof that the government "has exercised coercive power or has provided . . . significant encouragement" for the challenged action. Blum, 457 U.S. at 1004.

It appears that the federal government reimburses MMM and PMC on a capitation basis--thought to encourage preventive care and other efficiencies--but MMM and PMC were free to compensate the doctors with whom they contracted on any basis they liked. And, if the federal government did _require_ the companies to use capitation for their own payments to doctors, the proper suit would be normally against the government itself and rarely against those who merely obeyed the government's order.

Finally, the Supreme Court's latest gloss on the entwinement doctrine states that "public entwinement in the

management and control" of a private entity can create a basis for state action, Brentwood, 531 U.S. at 297 (emphasis added), but the requisite entwinement exists only when government actors manage or exercise control over a nominally private entity. Compare id. at 298 (eighty-four percent of voting members of association were representatives of public schools) and Evans v. Newton, 382 U.S. 296, 301 (1966) (city maintained a park nominally owned by private trustees) with Logiodice, 296 F.3d at 28 (no entwinement where private school was run by private trustees rather than public officials). In this case, there are no allegations that government officials played any role in the management or control of any of the appellee corporations.

Because we hold that the appellees are not governmental actors, the appellants' constitutional claims necessarily fail, but they would be unpromising even were appellees government actors. While appellants claim that they were subject to discrimination for refusing to join MSO and accept capitation payments, governmental economic regulation, including a preference for capitation, would be reviewed under the highly deferential rational basis standard, R.I. Hospitality Ass'n v. City of Providence ex rel. Lombardi, 667 F.3d 17, 40 (1st Cir. 2011), and would hardly be deemed "irrational."

Appellants also claim that their free assembly rights were jeopardized by their exclusion from practicing at certain

hospitals.  But a doctor's inability to practice at a hospital as a result of his unwillingness to accept the compensation offered by the HMO that contracts with the hospital or patients has nothing to do with the right to assemble.

Antitrust Claim.  The appellants contend that the appellees MMM, PMC, and MSO violated Sherman Act section 1, 15 U.S.C. § 1, which prohibits any "contract, combination . . . or conspiracy, in restraint of trade," by engaging in a group boycott against the appellants.  A violation of section 1 may well occur when a group of independent competing firms engage in a concerted refusal to deal with a particular supplier, customer, or competitor.  E.g., Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 212 (1959); Fashion Originators' Guild of Am. v. Fed. Trade Comm'n, 312 U.S. 457, 465 (1941).

But it is patent in this case, as we explain hereafter, that MMM, PMC, and MSO are not independent firms; rather, they are wholly owned subsidiaries of the same parent company.  In Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984), the Supreme Court held that a corporation and its wholly owned subsidiary "have a complete unity of interest," id. at 767-68, and as a single economic unit cannot violate section 1's conspiracy prohibition, id. at 771.  The rationale and underlying policy apply

with equal force to sister corporations that are wholly owned subsidiaries of the same parent.[4]

American Needle, Inc. v. National Football League, 130 S. Ct. 2201 (2010), cited by appellants, provides no support for their position. American Needle followed conventional doctrine by refusing to expand Copperweld to treat a sports league--an agglomeration of independently owned and managed teams--as immune from section 1 in the marketing of intellectual property. The language to which appellants cite observed that the teams are "independent centers of decisionmaking," id. at 2209 (quoting Copperweld, 467 U.S. at 769), as if this also applied as well to the sister companies in this case.

But a sports league is a "hybrid arrangement" in which franchises have "distinct entrepreneurial interests" in some areas, yet promote common interests of the league in others. Fraser v. Major League Soccer, L.L.C., 284 F.3d 47, 57-58 (1st Cir.), cert. denied, 537 U.S. 885 (2002). In American Needle, the Supreme Court engaged in a functional analysis of whether NFL franchises compete or share economic interests, finding that the franchises compete when selling merchandise embodying their intellectual property and

---

[4]Odishelidze v. Aetna Life & Cas. Co., 853 F.2d 21, 23 (1st Cir. 1988); Siegel Transfer, Inc. v. Carrier Exp., Inc., 54 F.3d 1125, 1133 (3d Cir. 1995); Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 146 (4th Cir. 1990); Hood v. Tenneco Tex. Life Ins. Co., 739 F.2d 1012, 1015 (5th Cir. 1984); Directory Sales Mgmt. Corp. v. Ohio Bell Tel. Co., 833 F.2d 606, 611 (6th Cir. 1987).

so can violate section 1 by collaborating in the marketing of that intellectual property.  <u>American Needle</u>, 130 S. Ct. at 2206-07, 2212-13.

By contrast to the sports teams in <u>American Needle</u>, the appellee subsidiaries in this case are <u>wholly owned</u> by the parent and--whether or not certain decisions are delegated to subsidiaries--have a total unity of economic interests.  The appellants' argument is that used in several antique precedents once used as an excuse for applying section 1 to single economic units, <u>Kiefer-Stewart Co.</u> v. <u>Joseph E. Seagram & Sons, Inc.</u>, 340 U.S. 211, 215 (1951); <u>United States</u> v. <u>Yellow Cab Co.</u>, 332 U.S. 218, 227-28 (1947), precedents that were effectively overruled by <u>Copperweld</u>, 467 U.S. at 773-74, 777.

Of course, a company or any other single economic unit can violate section 2 of the Sherman Act, which prohibits attempts to monopolize and monopolization; but this assumes the existence of an economic market in which a monopoly exists or is potentially within reach.  <u>See</u> <u>United States</u> v. <u>Grinnell Corp.</u>, 384 U.S. 563, 570 (1966); <u>United States</u> v. <u>E.I. du Pont de Nemours & Co.</u>, 351 U.S. 377, 380 (1956).  No economic market is sufficiently alleged in the complaint here, <u>cf.</u> <u>E. Food Servs., Inc.</u> v. <u>Pontifical Catholic Univ. Servs. Ass'n, Inc.</u>, 357 F.3d 1, 9 (1st Cir. 2004) (dismissing section 1 claim for failure to allege an economic market); and anyway the appellants have abandoned their section 2

claim by declining to brief it on this appeal. <u>Rodriquez</u> v. <u>Municipality of San Juan</u>, 659 F.3d 168, 175 (1st Cir. 2011).

Although the legal analysis just set forth is beyond serious dispute, the factual predicate--that the appellees are wholly owned subsidiaries of a single corporate enterprise--is not asserted in the complaint; rather, as noted, the appellees asserted the fact that they were sister companies in an affidavit made under penalty of perjury appended to their reply to the appellants' opposition to their motion to dismiss.

Where the district court considers matters outside the pleadings on a Rule 12(b)(6) motion to dismiss, the district court must "treat[] [the motion] as one for summary judgment under Rule 56" and give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Appellants could have complained to the district court, or even to us, that they had, or reasonably hoped to obtain, proof that the appellees were not wholly owned subsidiaries but despite Rule 12(d) were denied such an opportunity.

They did nothing of the kind in the district court and, in this court, their brief instead questions the affidavit's <u>credibility</u> on no serious ground and offers a vague statement that the district court "contravene[d] the procedural rule that provides that the facts averred at the Complaint should be deemed as true," although their complaint nowhere states that the appellees are

-13-

independently owned.  The brief does not even directly argue that the district court erred in considering the affidavit.

To the extent that the appellants had any argument, it is waived by "perfunctory" treatment, United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990); and, in any event, any formal error by the district court in taking appellants' silence in the face of the affidavit as acquiescence (qui tacet consentire videtur) was rendered harmless by their failure to claim plausibly that appellants have or reasonably hope to obtain proof to contradict the affidavit.

Affirmed.