# United States Court of Appeals
## For the First Circuit

No. 12-1859

DÍAZ AVIATION CORPORATION, d/b/a Borinquen Air,

Plaintiff, Appellant,

SIXTO DÍAZ-SALDAÑA

Plaintiff,

v.

AIRPORT AVIATION SERVICES, INC.; JOSÉ ALGARÍN; RAFAEL MATOS;
PUERTO RICO PORTS AUTHORITY; FERNANDO BONILLA; FEDERICO SOSA-
ROMÁN, a/k/a Fred Sosa-Román; EDWIN SANTANA-DE LA ROSA;
ARNALDO DELEO; EDGAR SIERRA; ERIC GARCÍA; ALVARO PILAR,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Vélez-Rivé, U.S. Magistrate Judge]

Before

Lynch, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Sixto M. Díaz-Saldaña, on brief for appellant.
Guillermo De Guzmán-Vendrell and De Guzmán Law Offices, on
brief for appellees Airport Aviation Services, Inc. and Edwin
Santana-de la Rosa.
Arturo Díaz-Angueira and Cancio, Nadal, Rivera & Díaz, P.S.C.,
on brief for appellees José Algarín and Rafael Matos.
Margarita Mercado-Echegaray, Office of the Solicitor General,
Department of Justice, Commonwealth of Puerto Rico, on brief for
appellees Fernando Bonilla and Federico Sosa-Román.
Myra M. Vélez-Plumey and Fernández, Collins Cuyar & Plá, on

brief for non-appellees Puerto Rico Ports Authority, Alvaro Pilar, Arnaldo Deleo, Edgar Sierra and Eric García.

————————————————

June 14, 2013

————————————————

**TORRUELLA, Circuit Judge.**  A company that sells aviation fuel at a Puerto Rico airport brought suit against a rival company, the Puerto Rico Ports Authority, and employees of those entities, claiming that the defendants wrongfully interfered with its business.  The district court dismissed the claims against some defendants before trial, and granted judgment for the remaining defendants after a bench trial.  Finding no error, we affirm.

**I**

The plaintiff-appellant is Díaz Aviation Corporation ("Díaz Aviation"), a company that also does business under the trade names Borinquen Air and Amber Service.  Díaz Aviation has provided aviation services at the Luis Muñoz Marín International Airport ("LMMIA") in Carolina, Puerto Rico, since 1960.  Although the business began as an airline, in 1985 it began selling aviation fuel.  By 2005, Díaz Aviation was selling around $2 million of fuel per year, and its main customer was the United States military.

Sixto Díaz-Saldaña ("Díaz") is the founder, sole shareholder, and general manager of Díaz Aviation.  He is also a licensed attorney, and has chosen to represent his corporation throughout this litigation, in the district court and on appeal.

One group of defendants consists of Airport Aviation Services, Inc. ("AAS") and some current and former employees of AAS.  AAS is a Puerto Rico corporation that sells aviation fuel at LMMIA; it was formerly part of a consortium of Puerto Rican

-3-

companies known as "Empresas Santana." Edwin Santana de la Rosa was formerly a stockholder, director, and officer of AAS; however, he sold his stock in AAS and resigned from all positions at AAS in March 2008. José Algarín is the president and CEO of AAS. Rafael Matos is the Director of Fuel Sales and Operations Manager of AAS.

The second group of defendants is the Puerto Rico Ports Authority ("PRPA") and various PRPA employees. The PRPA is a corporation owned by the Puerto Rico government that ran LMMIA during the relevant time frame. Fernando Bonilla is a former Executive Director of the PRPA. Federico Sosa-Román is a former manager of LMMIA. Alvaro Pilar is the Executive Director of the PRPA. Arnaldo Deleo is the Director of Aviation of PRPA and manager of LMMIA. Edgar Sierra is the Director of Operations at LMMIA. Eric Gracia is the Assistant Director of Operations at LMMIA.

Díaz Aviation filed a complaint in the federal district court on June 26, 2009, and filed an amended complaint on February 17, 2010. Broadly speaking, the amended complaint alleges that a corrupt relationship existed between AAS and PRPA, and that both organizations and their employees took improper actions in order to drive Díaz Aviation out of business. Díaz Aviation alleges that Santana has paid bribes to the governing political party of Puerto Rico, and that as a result, the PRPA has systematically favored AAS and discriminated against Díaz Aviation.

-4-

The complaint points to several specific actions and incidents, including:

-In March 2005, the PRPA brought an eviction action against Díaz Aviation in Puerto Rico court. This action ultimately failed because Díaz Aviation had paid rent and the PRPA had accepted it.

-In 2009, AAS won a contract to supply the military with fuel at LMMIA. Díaz Aviation alleges that AAS has wrongfully claimed that this is an exclusive contract, and has interfered with Díaz Aviation's fuel sales to the Air Force.

-On October 23, 2009, Algarín complained to a PRPA employee about Díaz Aviation; the next day, the PRPA removed Díaz Aviation's fueling permits and expelled Díaz Aviation's trucks from the fueling ramps for approximately two weeks.

-On January 20, 2010, PRPA employees removed a military airplane that Díaz Aviation was fueling, claiming that the airplane was illegally parked; AAS then sold fuel to the airplane.

The complaint does not include headings for separate counts or causes of action, but it references numerous federal and Puerto Rico statutes in a scattered fashion. This lack of organization makes it difficult to determine what causes of action Díaz Aviation is pursuing. The causes of action referenced most prominently in the complaint are Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., based on bribery and fraud. The complaint also mentions 42 U.S.C. § 1983

-5-

(civil rights); 18 U.S.C. § 287 (the False Claims Act); 18 U.S.C. § 241 (conspiracy against federal rights); Article 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5142;[1] P.R. Laws Ann. tit. 3, § 1822 et seq. (Puerto Rico ethics law); and P.R. Laws Ann. tit. 33, § 4883 (criminal statute barring public employees from using their position for the benefit of a third party).

All defendants filed motions to dismiss, and the district court granted the motions filed by the PRPA and individual PRPA defendants Bonilla, Pilar, Sosa, Deleo, Sierra, and Gracia. The district court dismissed these claims under the Local Government Antitrust Act ("LGAA"), 15 U.S.C. §§ 35, 36, which immunizes local governments and local government employees from federal antitrust damages. See Díaz Aviation Corp. v. P.R. Ports Auth., 2010 WL 2991251, at *4-5 (D.P.R. July 27, 2010). The district court's ruling did not mention or discuss any non-antitrust claims.

Following discovery, Díaz Aviation and the remaining defendants (AAS, Santana, Algarín, and Matos) filed cross motions for summary judgment. The district court denied the motions of Díaz Aviation, AAS, Algarín, and Matos, finding that disputed factual issues remained. See Díaz Aviation Corp. v. Airport Aviation Servs., Inc., 2011 WL 5335519, at *8, 12-13 (D.P.R.

---

[1] The complaint cites "Articles 1803 and 1803 of the Puerto Rico Civil Code." This is apparently a typographical error for Articles 1802 and 1803. Article 1802, P.R. Laws Ann. tit. 31, § 5141, is a general negligence and tort statute, and Article 1803 provides for supervisory liability for violations of Article 1802.

Nov. 7, 2011). The district court granted Santana's motion for summary judgment because he had already left AAS when the disputes about fueling occurred. Id. at *11.

In February 2012, a bench trial occurred between Díaz Aviation and AAS, Algarín, and Matos. By that time, the claims had been narrowed to the Sherman Act and Article 1802 of the Puerto Rico Civil Code ("Article 1802"). In spite of the district court's advice that Díaz Aviation should retain outside counsel, Díaz chose to represent his corporation while also serving as a witness.

Díaz Aviation's case consisted of testimony from employees of the Puerto Rico Police, PRPA, AAS, and Díaz Aviation (including Díaz himself), along with several documentary exhibits. The testimony focused mostly on incidents between Díaz Aviation, PRPA, and AAS in 2009 and 2010 relating to fueling activities, and particularly fueling of military airplanes. Where necessary, we will describe the evidence in greater detail below.

After Díaz Aviation concluded its case, the defendants filed for a judgment on partial findings in their favor, pursuant to Fed. R. Civ. P. 52(c). The district court granted the motion, finding that Díaz Aviation had failed to meet its burden of proof on all claims. See Díaz Aviation Corp. v. P.R. Ports Auth., 2012 WL 706119 (D.P.R. Mar. 5, 2012). The district court's factual findings and legal reasoning are described below.

Díaz Aviation moved for a new trial or for reconsideration of the district court's previous decision. The district court denied the motion, saying that its earlier decision was supported by the evidence at trial. Díaz Aviation filed a timely appeal.

## II

Díaz Aviation's notice of appeal and original docketing statement have led to a dispute about the scope of the appeal. Díaz Aviation's notice of appeal stated that it:

> hereby appeal[s] to the United States Court of Appeals for the First Circuit from the ORDER, Docket 346, dated June 12, 2012, denying a motion, filed on March 21, 2012, Dockets 342 and 343, seeking a new trial or the modification of the OPINION AND ORDER entered on March 5, 2012, Dockets 339 and 340 (Judgement).

In other words, the notice of appeal listed as the subject of appeal the denial of reconsideration of the final judgment, but not the judgment itself. Further, the original docketing statement listed only three appellees: AAS, Matos, and Algarín. Yet Díaz Aviation's appellate brief urged reversal not just of the denial of reconsideration, but of the final judgment after trial, and the earlier judgments dismissing the claims against the PRPA defendants and Santana.

After Díaz Aviation filed its brief, Sosa wrote to this court asking us to disregard any arguments against him because he was not listed as an appellee in the docketing statement, and the

notice of appeal did not encompass the orders dismissing him from the case.  We allowed Díaz Aviation to amend its docketing statement to include additional appellees if it wished, and invited the parties to address the scope of the notice of appeal in their briefs.  Díaz Aviation then filed an amended docketing statement listing every defendant except Pilar as an appellee.  In their brief, Sosa and Bonilla renewed the argument that the orders dismissing the case as to them were not included in the notice of appeal.

Under Rule 3 of the Federal Rules of Appellate Procedure, a notice of appeal must "designate the judgment, order, or part thereof being appealed."  Fed. R. App. P. 3(c)(1)(B).  Although "[c]ourts will liberally construe the requirements of Rule 3," Smith v. Barry, 502 U.S. 244, 248; accord Blockel v. J.C. Penney Co., 337 F.3d 17, 23 (1st Cir. 2003), "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review," Smith, 502 U.S. at 248.  These twin commands from the Supreme Court -- that Rule 3 is jurisdictional, but that it should be construed liberally -- inherently give courts some flexibility about when to apply Rule 3's jurisdictional bar and when to use liberal construction to rescue a facially deficient notice of appeal.

We are convinced that Díaz Aviation's notice of appeal should be construed liberally to include the final judgment.  It is

well settled law that when a notice of appeal addresses only the order denying reconsideration and not the underlying judgment, "courts have some latitude to consider other grounds originally urged against the underlying dismissal, especially where the issues on original dismissal and the reconsideration order overlap or are intertwined." McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 213 (1st Cir. 2012); see also Rojas-Velázquez v. Figueroa-Sancha, 676 F.3d 206, 209 (1st Cir. 2012); Alstom Caribe, Inc. v. Geo. P. Reintjes Co., 484 F.3d 106, 112 (1st Cir. 2007). Díaz Aviation's motion for reconsideration largely rehashed the arguments it made in opposition to the original judgment. As we have often done when the issues are intertwined, we will treat the appeal of the denial of reconsideration as also including an appeal of the final judgment.

Yet construing Díaz Aviation's appeal to encompass the earlier orders from nearly two years earlier dismissing the PRPA defendants from the case would go a step too far. Where a notice of appeal does not mention certain interlocutory orders or defendants, the touchstone is whether the appellant has indicated an intent to seek review of those orders through his notice of appeal and accompanying documents. See United States v. Dowell, 257 F.3d 694, 698 (7th Cir. 2001) ("[A]n error in designating the judgment will not result in a loss of appeal if the intent to

appeal from the contested judgment may be inferred from the notice and if the appellee has not been misled by the defect.").

Two peculiar facts of this case convince us that Díaz Aviation has not indicated a sufficiently clear intent to appeal the judgments dismissing the PRPA defendants from the case. First, while Díaz Aviation's appellate brief contains occasional glancing arguments related to those judgments, it also asserts that the PRPA defendants are "not denominated as appellees." Thus, the brief is at best equivocal about the intent to appeal as to the PRPA defendants. Second, although the amended docketing statement adds most of the PRPA defendants as appellees, it still lists only the denial of reconsideration as the subject of appeal, and does not mention any earlier interlocutory orders. On the specific facts of this case, we conclude that Díaz Aviation has not provided sufficient notice of intent to appeal the judgments in favor of the PRPA defendants. We have some flexibility in our construction of Rule 3, but we see no reason to exercise special flexibility in favor of a corporation in a business tort case that is represented by counsel.

For Santana, although Díaz Aviation has asked this court to reverse the summary judgment in Santana's favor, Díaz Aviation has not provided any developed argument about why we should do so. We therefore conclude that Díaz Aviation has waived his perfunctory challenge to the district court's grant of summary judgment to

-11-

Santana.  See United States v. Zannino, 895 F.2d 1, 19 (1st Cir. 1990).

All that remains of the appeal are Díaz Aviation's challenges to the judgments in favor of the trial defendants AAS, Algarín, and Matos.

## III

Díaz Aviation appeals the district court's grant of a motion for non-suit under Fed. R. Civ. P. 52(c) in favor of AAS, Algarín, and Matos after Díaz Aviation presented its case at the bench trial.  Most of Díaz Aviation's arguments challenge credibility determinations and factual inferences the district court drew from the evidence.  For example, Díaz Aviation contends that the district court should not have credited the testimony of a PRPA employee who said that he removed a military plane from Díaz Aviation's ramp because it was illegally parked in an unsafe area. Díaz Aviation also argues that the court should have inferred that a conspiracy between PRPA and AAS existed from an email chain between PRPA and AAS employees, despite Deleo's testimony denying a conspiracy.

This type of argument is unavailing.  When serving as factfinder, the trial judge is entitled to draw reasonable inferences and make credibility determinations.  We defer to the trial judge's factual findings and set them aside only if "clearly erroneous."  Fed. R. Civ. P. 52(a)(6).  Díaz Aviation has made no

showing to leave us with "the definite and firm conviction that a mistake has been committed." Jackson v. United States, 708 F.3d 23, 30 (1st Cir. 2013) (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985)) (internal quotation marks omitted). We now turn to each cause of action to show why the district court was correct (or at the very least, not clearly erroneous) in concluding that Díaz Aviation had not met its burden of proof.

Sherman Act Section 1. Section 1 of the Sherman Act bars "[e]very contract, combination . . ., or conspiracy, in restraint of trade . . . ." 15 U.S.C. § 1. A Section 1 violation requires an agreement, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553 (2007), and this agreement must be between separate economic entities rather than members of the same economic enterprise, see Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769-71 (1984); González-Maldonado v. MMM Healthcare, Inc., 693 F.3d 244, 249 (1st Cir. 2012). Most agreements are judged by the "rule of reason," under which they are declared illegal only if unreasonable or anticompetitive. See Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S. 877, 885-86 (2007).[2]

---

[2] A narrow class of agreements such as horizontal price fixing "that would always or almost always tend to restrict competition and decrease output" are declared unlawful per se, which obviates the need to determine the reasonableness of a specific agreement. Leegin, 551 U.S. at 886 (quoting Bus. Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717, 723 (1988)). Díaz Aviation makes no claim that any agreement in this case falls under the per se category.

The district court's ruling can be sustained on either of two grounds. First, Díaz Aviation did not prove the existence of concerted action. An agreement between AAS and its employees Algarín and Matos would not qualify as concerted action under Section 1. The only potential agreement of which Díaz Aviation presented any evidence was an agreement between AAS and PRPA. As evidence of such a conspiracy, Díaz Aviation pointed to an email exchange between AAS and PRPA employees that took place before PRPA employees removed Díaz Aviation's fueling permits and expelled its fueling trucks from the airport ramps.

On October 23, 2009, Algarín received an email from another AAS employee stating that Díaz Aviation had caused an "imminent security risk" through its conduct in fueling military planes; it enclosed a police report of an incident involving Díaz Aviation and noted that Díaz Aviation's employees "are becoming very upset." Algarín then forwarded the email to a PRPA employee, saying: "The important thing is to prevent any personal incident actions, apart from any type of accident while fuel is being supplied. I would appreciate your intervening in the matter." That PRPA employee forwarded the email to Deleo, his supervisor.

The next day, Deleo forwarded this email chain to Díaz, noting that Díaz Aviation fueled an airplane "which should have been serviced by [AAS]." Deleo said that AAS had a contract to fuel military planes, but Díaz Aviation did not have a fuel permit

with the PRPA. Deleo stated, "Based on said communication and at the request of [AAS], you are requested to immediately cease to interfere with this or other duly authorized companies with fuel permits in effect." That same day, PRPA employees removed the fuel permits from Díaz Aviation's trucks and escorted the trucks outside the fueling area. Díaz Aviation's trucks were kept from the fueling area for about fifteen days until Díaz Aviation obtained an injunction in Puerto Rico court allowing it to return, on the basis that although its fueling permit was expired, it had become permanent.

Díaz Aviation argues that the email exchange confirms the existence of an unlawful conspiracy between AAS and PRPA, but the testimony at trial told a different story. Algarín testified that he sent the email to PRPA to deal with potential security issues and that while he hoped PRPA would take appropriate action, he was not demanding or expecting that PRPA take any specific action. Deleo testified that he ordered Díaz Aviation's trucks removed because Díaz Aviation's interference with fueling operations was causing safety and security issues, and he believed at the time that Díaz Aviation did not have a valid contract to sell fuel at LMMIA; he denied a conspiracy with AAS or its employees. The contention that Díaz Aviation's actions caused security issues was further supported by testimony from two AAS employees that Díaz had used aggressive and threatening language toward them on the airport

-15-

ramps.  This evidence plausibly supported the conclusion that AAS and PRPA were taking reasonable security measures rather than engaging in a conspiracy to restrain trade, and the district court did not clearly err in finding no such conspiracy.

Second, Díaz Aviation has not shown that the defendants' actions were unreasonable or anticompetitive.  Rule of reason analysis typically requires a plaintiff to show that the defendants' actions enhanced market power -- i.e., the power to raise prices or exclude competition -- which in turn requires some economic analysis of the relevant market.  See E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Assoc., Inc., 357 F.3d 1, 5 (1st Cir. 2004).  But Díaz Aviation put forward no evidence about market definition, market share, the effect on pricing or output, or other relevant economic variables.  Further, the evidence at trial demonstrated a legitimate procompetitive justification for many of the actions taken against Díaz: maintaining safety and security at LMMIA.  We affirm the district court's determination that Díaz Aviation did not meet its burden under the rule of reason.

Sherman Act Section 2.[3]  Section 2 makes it illegal to "monopolize, or attempt to monopolize . . . any part of the trade

---

[3]  It is not clear that a Section 2 claim ever should have been in the case.  The amended complaint refers only to Section 1.  But the district court treated the complaint as including a Section 2 claim "in an abundance of caution," Díaz Aviation Corp., 2012 WL 706119, at *2, and we will do the same.

or commerce among the several States . . . ." 15 U.S.C. § 2. The elements of monopolization are "(1) possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966). The elements of attempted monopolization are "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993). Absent direct proof of supracompetitive prices, monopoly power is typically proven by defining a relevant market and showing that the defendant has a dominant share of that market. See Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 196-97 (1st Cir. 1996).

The district court correctly concluded that Díaz Aviation failed to proffer evidence of the sort necessary to prove monopoly power or dangerous probability of monopoly, including evidence of market definition, market share, barriers to entry, or any other economic evidence of monopoly power. The only evidence that Díaz Aviation did put forward cut against its position. Multiple witnesses testified that although AAS employees would approach military pilots with a copy of their military contract and offer to provide fuel, the military pilots remained free to purchase fuel

from a competitor. Several weeks before the trial, two military pilots decided to purchase fuel from Díaz Aviation even after AAS had approached and offered its services. The district court committed no error in dismissing the Section 2 claim.

Article 1802. Article 1802 of the Puerto Rico Civil Code is a general negligence and tort statute, which reads: "A person who by act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. The elements of an Article 1802 claim are a physical or emotional injury, a negligent or intentional act or omission (i.e., a wrongful act), and a causal connection between the injury and the defendant's wrongful conduct. See Vázquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007).

As the district court noted, Díaz Aviation's proof is deficient on all three elements. Díaz Aviation elicited much testimony about AAS' military fueling contract. The evidence showed that AAS had a requirements contract with the Defense Energy Support Center to provide aviation fuel to military planes at LMMIA. AAS obtained this contract through competitive bidding, and Díaz Aviation chose not to bid. The contract obligated AAS to supply the military planes with their required fuel needs and obligated the military to accept and pay for such fuel. AAS would approach military planes at LMMIA with a copy of the contract and

offer to sell fuel. The military pilots could choose to buy fuel from either AAS or a competitor, but if they chose a competitor, AAS could submit a claim for payment of the profits AAS would have gained from the sale.

None of this evidence showed that the defendants were negligent or otherwise acted wrongfully in fulfilling their contract. Díaz Aviation provided no evidence that AAS misled pilots about the contents of the contract, or excluded Díaz Aviation from competing for fuel sales in any way. To the contrary, the evidence showed that Díaz himself was sometimes belligerent or aggressive in interfering with AAS' operations. For example, on one occasion, Díaz blocked the way of an AAS employee who was attempting to offer his services to a military pilot and said, "You can go [to] hell. Do you come here to be screwing around?". On another occasion, after both Díaz and an AAS employee had offered to fuel a military plane, Díaz put his hand on the AAS employee's back and said, "you and your wife will remember me," which the AAS employee perceived as a threat.

Many of the actions proven at trial were committed by PRPA employees, not by the defendants. For example, PRPA employees filed eviction actions against Díaz in Puerto Rico court, expelled Díaz Aviation's trucks from the airport ramps in October 2009, and on January 20, 2010, ordered a military airplane to relocate from Díaz Aviation's ramp, purportedly because of safety concerns. Not

only did Díaz Aviation fail to prove that these actions were wrongful or negligent, but it also failed to prove that the AAS defendants bore any causal responsibility for them. As described earlier, Díaz Aviation could not prove that AAS conspired with PRPA to induce PRPA to take these actions.

Finally, Díaz Aviation provided no reliable evidence of damages. Díaz and his son offered some testimony about Díaz Aviation's finances, but this testimony was unsupported by any financial documentation. Díaz Aviation now admits that it has yet to quantify the damages and demands an additional evidentiary hearing to quantify damages. But it was Díaz Aviation's burden to prove damages at trial, and the district court was entitled to find that Díaz Aviation had failed to meet its burden.

**Affirmed**.