PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 17-3368 and 19-3203
_____

UNITED STATES OF AMERICA

v.

ERIC SEIGHMAN,
                    Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-14-cr-00206-004)
District Judge: Honorable Cathy Bissoon
_____

Argued May 28, 2020
Before: HARDIMAN, PHIPPS, and NYGAARD, *Circuit
Judges*.

(Filed: July 21, 2020)


Jacob Schuman [Argued]
Brett G. Sweitzer
Federal Community Defender Office for the Eastern District

of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
 *Counsel for Appellant*

Adam N. Hallowell [Argued]
Laura S. Irwin
Office of United States Attorney
Western District of Pennsylvania
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
 *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

In *United States v. Haymond*, 139 S. Ct. 2369 (2019), the Supreme Court held that subsection (k) of the supervised release statute (18 U.S.C. § 3583) violated the Fifth and Sixth Amendments to the United States Constitution. Appellant Eric Seighman claims subsection (g) of that statute must suffer the same fate. Because there are pivotal differences between the two subsections, we disagree and reject Seighman's challenge to the constitutionality of 18 U.S.C. § 3583(g).

# I

In 2014, Seighman pleaded guilty to a counterfeiting conspiracy in violation of 18 U.S.C. § 371, a Class D felony carrying a maximum prison term of 60 months. The District Court sentenced him to 30 months' imprisonment with 36 months of supervised release to follow. As a condition of that release, Seighman was prohibited from "unlawfully possess[ing] a controlled substance." App. 30.

Soon after he left prison, Seighman went astray by buying heroin, testing positive for opiates, and failing to comply with drug treatment. Upon petition of the United States Probation Office, the District Court revoked Seighman's supervision and sentenced him to another 24 months' imprisonment plus 12 months of supervised release. The District Court also strongly recommended significant and intensive drug treatment for Seighman.

After his second release from prison, Seighman transitioned to Renewal, Inc., a residential reentry center. There he violated his supervised release once again. On August 7, 2019, the day after Seighman's second term of supervised release began, the Probation Office petitioned the District Court to issue a warrant for Seighman because he brought heroin into Renewal. The next week, the Probation Office filed supplemental petitions alleging that Seighman had committed two more violations: leaving Renewal without permission and buying illegal drugs.

The Probation Office calculated Seighman's revocation sentencing range as 21–27 months' imprisonment. But because Seighman's crime of conviction was a Class D felony, 18 U.S.C. § 3583(e)(3) limited his maximum term of

imprisonment to 24 months. The Government concurred with the Probation Office.

Seighman objected to the Probation Office's calculation. He argued that because his counterfeiting conspiracy conviction permitted a maximum of 60 months in prison, he could be sentenced to no more than six months in prison (since he had served 54 months already). On Seighman's view, any sentence of more than six months would require a jury trial under the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Haymond*.

The District Court held a sentencing hearing, at which Seighman argued his objection. The prosecutor responded that "revocation and a term of imprisonment are mandatory under [subsection (g)] because of drug possession." App. 98–99. He also asked the Court to "place on the record if it agrees it would revoke and impose a term of imprisonment even if that was not mandatory under the statute." App. 99. The Court found by a preponderance of the evidence that Seighman possessed a controlled substance. It then "agree[d] with the government that supervised release both must and should be revoked" and sentenced Seighman to 24 months' imprisonment. App. 4, 103–04.

The District Court rejected Seighman's objection for three reasons. First, it cited a "swath of court decisions [rejecting] the notion that we should aggregate the sentences, both original and on supervised release, to ensure that the underlying statutory maximum sentence is not breached." App. 105. Second, it noted "the *Haymond* [C]ourt took pains to limit its decision to [subsection (k)]." *Id.* Finally, it explained "Section 3583(e) . . . governs supervised release revocation proceedings generally, including [Seighman's], . . . [and] does

4

not contain any similar mandatory minimums triggered by judge-found facts." App. 105–06. In sum, the District Court said it was "not willing to go where the Supreme Court refused to." App. 106.

Seighman timely appealed.

## II

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over purely legal questions. *See United States v. Ware*, 694 F.3d 527, 531 (3d Cir. 2012).

In this appeal, Seighman principally argues that the mandatory imprisonment aspect of subsection (g) is unconstitutional. But he never raised that argument in the District Court, so we review for plain error. *See United States v. Lopez*, 650 F.3d 952, 959 (3d Cir. 2011). Plain error exists when an error is clear at the time it was made and it affected the defendant's substantial rights. *United States v. Olano*, 507 U.S. 725, 732–33 (1993). If those conditions are met, we may reverse only if the error affected the fairness, integrity, or public reputation of the proceeding. *Id*. at 732.

## III

We begin by briefly summarizing the role of supervised release in the federal criminal justice system. Under the Sentencing Reform Act of 1984, whenever a federal court sentences a criminal defendant to a term of imprisonment, it may include "a requirement that the defendant be placed on a term of supervised release." 18 U.S.C. § 3583(a). Federal courts do just that in almost all criminal cases. In a multi-year

5

study of federal sentences imposed after the Supreme Court's landmark decision in *United States v. Booker*, 543 U.S. 220 (2005), the United States Sentencing Commission reported that over 99 percent of federal sentences for over one year's imprisonment also included a term of supervised release. *See Federal Offenders Sentenced to Supervised Release*, U.S. Sentencing Comm'n (July 2010), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2010/20100722_ Supervised_Release.pdf. The maximum length of a defendant's supervised release term usually depends on the seriousness of his crime of conviction. *See* 18 U.S.C. § 3583(b). For example, a defendant who committed a Class D felony cannot be sentenced to a term of supervised release exceeding three years. *See id.* § 3583(b)(2).

Because supervised release is a system of post-conviction monitoring intended to facilitate the offender's reintegration into society, probation officers have discretion over whether to report an offender's violations of supervised release. If violations are severe or pervasive enough, the probation officer will alert the district court. In those cases, if the court finds by a preponderance of the evidence that the defendant violated his supervised release, the court may revoke it and "require the defendant to serve in prison all or part of the term of supervised release authorized by statute" for his crime of conviction. *See id.* § 3583(e)(3). Generally, the court has discretion whether to sentence the defendant to imprisonment, and the maximum length of a defendant's sentence depends on the seriousness of his crime of conviction. *See id.* For example, a defendant who committed a Class D felony cannot be

sentenced to "more than 2 years in prison" for violating his supervised release. *See id.*

Having explained federal supervised release generally, we turn to the Supreme Court's decision last year in *Haymond*. There, the Court declared 18 U.S.C. § 3583(k) unconstitutional under the Fifth and Sixth Amendments. Subsection (k) states:

> (k) *Notwithstanding subsection (b), the authorized term of supervised release for any offense under* section 1201 involving a minor victim, and for any offense under section 1591, 1594(c), 2241, 2242, 2243, 2244, 2245, 2250, 2251, 2251A, *2252*, 2252A, 2260, 2421, 2422, 2423, or 2425, *is any term of years not less than 5, or life.* If a defendant required to register under the Sex Offender Registration and Notification Act commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, *the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment under subsection (e)(3) without regard to the exception contained therein. Such term shall be not less than 5 years.*

*Id.* § 3583(k) (emphasis added).

In *Haymond*, a jury found Andre Haymond guilty of possessing child pornography in violation of 18 U.S.C. § 2252(b)(2), which authorizes up to ten years in prison. *See* 139 S. Ct. at 2373. The judge sentenced Haymond to 38 months' imprisonment, followed by 120 months of supervised release.

7

*See id*. Haymond completed his prison sentence, but shortly thereafter, the government searched his computers and cellphone and found "59 images that appeared to be child pornography." *Id.* at 2374. A judge found by a preponderance of the evidence that Haymond "knowingly downloaded and possessed" thirteen of the images and, because subsection (k) applies to possession of child pornography, imposed the mandatory minimum prison term of five years. *Id.* at 2374–75. The sentencing judge did so unwillingly, noting that "[w]ere it not for [subsection (k)'s] mandatory minimum, . . . he 'probably would have sentenced in the range of two years or less.'" *Id.* at 2375. Under subsection (k), Haymond could have been sentenced to life in prison even though his crime of conviction that triggered his supervised release violation carried a ten-year maximum. *Id*. at 2373.

Haymond appealed to the United States Court of Appeals for the Tenth Circuit, which concluded subsection (k) violated his right to trial by jury because it imposed "a new and higher mandatory minimum resting only on facts found by a judge by a preponderance of the evidence." *Id.* at 2375. A divided Supreme Court affirmed. *See id.* at 2373. Writing for a plurality, Justice Gorsuch defined a "prosecution" as "the process of exhibiting formal charges against an offender before a legal tribunal," and a "crime" as an "act[] to which the law affixes . . . punishment." *Id.* at 2376 (internal quotation marks and citations omitted). He then observed that historically the jury has "exercise[d] supervisory authority over the judicial function by limiting the judge's power to punish." *Id.* And since *Apprendi*, the Court has "not hesitated to strike down . . . innovations that fail to respect the jury's supervisory function." *Id.* at 2377. For example, in *Alleyne*, the Court held that facts increasing a defendant's minimum punishment must

be proven to a jury beyond a reasonable doubt. *Id.* at 2378. Applying *Alleyne*, Justice Gorsuch concluded that the "facts the judge found [in Haymond's case] increased the legally prescribed range of allowable sentences in violation of the Fifth and Sixth Amendments." *Id.* (quotation marks and citation omitted).

Justice Gorsuch limited his analysis to the constitutionality of subsection (k) under *Alleyne*. *See id.* at 2383 ("As we have emphasized, our decision is limited to [subsection (k)]—an unusual provision enacted little more than a decade ago—and the *Alleyne* problem raised by its 5-year mandatory minimum term of imprisonment."). He declined to address the constitutionality of subsection (k) under *Apprendi*, or the constitutionality of subsection (g). *See id.* at 2379 n.4, 2382 n.7.

Justice Breyer concurred in the judgment. His opinion is the Court's holding because it supplies the narrowest ground supporting the judgment. *See Marks v. United States*, 430 U.S. 188, 193 (1977). Justice Breyer agreed with the dissent that "the role of the judge in a supervised-release proceeding is consistent with traditional parole." *Haymond*, 139 S. Ct. at 2385 (Breyer, J., concurring in the judgment). He also cautioned against "transplant[ing] the *Apprendi* line of cases to the supervised-release context," citing "potentially destabilizing consequences." *Id.* He nevertheless agreed with the plurality that subsection (k) is unconstitutional. His succinct concurrence merits quotation at length because it governs our analysis below:

> Revocation of supervised release is typically understood as "part of the penalty for the initial offense." *Johnson v. United States*, 529 U.S. 694,

700, 120 S. Ct. 1795, 146 L.Ed.2d 727 (2000). The consequences that flow from violation of the conditions of supervised release are first and foremost considered sanctions for the defendant's "breach of trust"—his "failure to follow the court-imposed conditions" that followed his initial conviction—not "for the particular conduct triggering the revocation as if that conduct were being sentenced as new federal criminal conduct." United States Sentencing Commission, Guidelines Manual ch. 7, pt. A, intro. 3(b) (Nov. 2018); see *post*, at 2392 – 2393. Consistent with that view, the consequences for violation of conditions of supervised release under § 3583(e), which governs most revocations, are limited by the severity of the original crime of conviction, not the conduct that results in revocation. See § 3583(e)(3) (specifying that a defendant may as a consequence of revocation serve no "more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, [no] more than 3 years in prison if . . . a class B felony," and so on).

[Subsection (k)] is difficult to reconcile with this understanding of supervised release. In particular, three aspects of this provision, *considered in combination,* lead me to think *it is less like ordinary revocation and more like punishment for a new offense*, to which the jury right would typically attach. *First,* [subsection (k)] applies only when a defendant commits a

10

discrete set of federal criminal offenses specified in the statute. *Second,* [subsection (k)] takes away the judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long. *Third,* [subsection (k)] limits the judge's discretion in a particular manner: by imposing a mandatory minimum term of imprisonment of "not less than 5 years" upon a judge's finding that a defendant has "commit[ted] any" listed "criminal offense."

*Taken together,* these features of § 3583(k) more closely resemble the punishment of new criminal offenses, but without granting a defendant the rights, including the jury right, that attend a new criminal prosecution. And in an ordinary criminal prosecution, a jury must find facts that trigger a mandatory minimum prison term. *Alleyne,* 570 U.S. at 103, 133 S. Ct. 2151.

*Id.* at 2386 (emphasis added).

## IV

Citing *Haymond*, Seighman claims the District Court committed plain error when it revoked his supervised release and sentenced him to 24 months in prison. He argues subsection (g) is "less like ordinary revocation and more like punishment for a new offense, to which the jury right would typically attach." *Id*. And he contends that subsection (g)

11

"shares all three of the features that rendered [subsection (k)] unconstitutional." Seighman Br. 13–14. We are unpersuaded.

Subsection (g) states:

**(g) Mandatory revocation for possession of controlled substance or firearm or for refusal to comply with drug testing.**—If the defendant—

(1) *possesses a controlled substance* in violation of the condition set forth in subsection (d);

(2) possesses a firearm, as such term is defined in section 921 of this title, in violation of Federal law, or otherwise violates a condition of supervised release prohibiting the defendant from possessing a firearm;

(3) refuses to comply with drug testing imposed as a condition of supervised release; or

(4) as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year;

the court *shall* revoke the term of supervised release and *require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3)*.

18 U.S.C. § 3583(g) (emphasis added).

Regarding Justice Breyer's first factor, we note that subsection (g) does not apply to a "discrete set of federal criminal offenses specified in the statute." *Haymond*, 139 S. Ct. at 2386 (Breyer, J., concurring in the judgment). By its terms, subsection (g) applies to conduct that does not rise to the level of a federal criminal offense, such as "refus[ing] to comply with drug testing" or repeatedly "test[ing] positive for illegal controlled substances." Recognizing this weakness, Seighman argues that because his supervised release was "mandatorily revoked for the discrete offense of drug possession," we "need not trouble [ourselves]" with the fact that subsection (g) also applies to noncriminal conduct. Reply Br. 2–3. But Justice Breyer's concurrence counsels in favor of reading subsection (g) holistically: he stressed that subsection (k) applies "*only* when a defendant commits a discrete set of federal criminal offenses specified in the statute." *Haymond*, 139 S. Ct. at 2386 (Breyer, J., concurring in the judgment).

The differences between the two subsections become even clearer when we consider Justice Breyer's second and third points of emphasis. Seighman is correct that subsection (g), like subsection (k), mandates imprisonment. But the former requires only one day in prison, while the latter mandated at least five years in prison.

Even more significantly, subsection (g) does not limit the judge's discretion in the same "manner" as subsection (k). Subsection (k) mandates five years' imprisonment and empowers the judge to impose a life sentence regardless of how serious (or minor) the defendant's crime of conviction was. By contrast, subsection (g) imposes a mandatory term of imprisonment of just one day, and the maximum length of the defendant's sentence depends on the seriousness of his crime of conviction under subsection (e)(3). Considering these three

factors "in combination," we are convinced that subsection (g) is more like ordinary revocation and less like punishment for a new offense. *Cf. id.*[1]

Seighman insists the one-day mandatory minimum "alone" violates the jury right, and the "length of the mandatory sentence is irrelevant." Reply Br. 3–4. We disagree. Justice Breyer stressed the length of subsection (k)'s mandatory minimum repeatedly. *See Haymond*, 139 S. Ct. at 2386 (Breyer, J., concurring in the judgment). And because he emphasized that the three factors he applied are to be considered "in combination," *id.*, it cannot be true that one factor "alone" is outcome-determinative.

Had we reached the opposite conclusion, Seighman's appeal would still fail. The novelty of the question presented precludes relief under the stringent *Olano* standard because any error would not have been plain. *See Olano*, 507 U.S. at 734. And because the District Court imposed a sentence well beyond a day in prison (24 months), it's clear that Seighman's substantial rights were not affected by subsection (g)'s

---

[1] Since *Haymond*, only a few federal courts have addressed the constitutionality of subsection (g) and their decisions are consistent with ours. *See, e.g.*, *United States v. Wilson,* 939 F.3d 929, 932 (8th Cir. 2019), *cert. denied*, 140 S. Ct. 1242 (2020) (declining to extend *Haymond* to subsection (g) in response to double jeopardy argument); *United States v. Badgett*, 957 F.3d 536, 540–41 (5th Cir. 2020) (holding district court did not plainly err by applying subsection (g) because no court has yet extended *Haymond* to that subsection); *United States v. Hernandez*, 2019 WL 6324743, at *3–4 (S.D.N.Y. 2019) (upholding subsection (g) after applying Justice Breyer's three factors).

mandatory minimum. *Id*. Indeed, the District Court's frustration with Seighman's repeated breaches of trust resulted in a term of imprisonment to the maximum extent the statute permits.

For these reasons, the District Court committed no error, much less plain error, when it sentenced Seighman under subsection (g).

VI

Seighman also argues that his sentence is unconstitutional under *Apprendi*. As counsel rightly conceded in his brief, however, Seighman is merely preserving this argument for Supreme Court review because Justice Breyer's refusal to "transplant the *Apprendi* line of cases to the supervised-release context" forecloses it. *Haymond*, 139 S. Ct. at 2385 (Breyer, J., concurring in the judgment); *see also* Seighman Br. 18. Justice Breyer's opinion is consistent with our own precedent, where we have rejected the argument that a defendant can establish an *Apprendi* violation by "aggregat[ing] . . . revocation sentences and then compar[ing] them to" a statutory maximum. *United States v. Dees*, 467 F.3d 847, 854 (3d Cir. 2006). Revocation sentences (other than those under subsection (k)) are "part of the penalty for the initial offense," and do not increase the penalty under *Apprendi*. *Johnson*, 529 U.S. at 700–01. At least four of our sister circuits agree. *See United States v. Doka*, 955 F.3d 290, 293–95 (2d Cir. 2020) (reaffirming that "the Constitution permits judges to revoke a defendant's term of supervised release [and impose a new prison term] after finding, under a preponderance-of-the-evidence standard, that the defendant violated his or her conditions of supervised release"); *United States v. McIntosh*, 630 F.3d 699, 703 (7th Cir. 2011) (holding

"the rule in *Apprendi* does not apply to a sentence imposed under § 3583 following the revocation of a supervised release"); *United States v. Hampton*, 633 F.3d 334, 341–42 (5th Cir. 2011) (same); *United States v. Huerta-Pimental*, 445 F.3d 1220, 1221 (9th Cir. 2006) (same).

\*  \*  \*

For the reasons stated, we will affirm Seighman's judgment of sentence.[2]

---

[2] Seighman also appealed his judgment of sentence in case no. 17-3368. That appeal is moot in light of our opinion in case no. 19-3203. Oral Argument 1:01:15.