Filed 12/7/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TYREL MARTIN,<br><br>    Defendant and Appellant. | E074315<br><br>(Super.Ct.No. 19PA001399)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Shahla S. Sabet, Judge.  Affirmed.

Micah R. Reyner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sedival and Andrew S. Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

This court recently held in *People v. Schaffer* (2020) 53 Cal.App.5th 500 (*Schaffer*) that a parolee exposed to a 180-day jail term for a parole violation resulting from non-criminal conduct was not entitled, under *United States v. Haymond* (2019) 588

1

U.S. __ [139 S.Ct. 2369] (*Haymond*), to have a jury determine beyond a reasonable doubt whether he had violated his parole. In this appeal we apply our holding in *Schaffer* to those who are exposed to potentially long prison sentences for similar parole violations.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant and appellant Tyrel Martin was convicted in 2014 of committing a lewd and lascivious act with a child by use of force, violence, duress, menace, or fear. (See Pen. Code, § 288, subd. (b)(1); all undesignated statutory references are to the Penal Code.) He was sentenced to a 5-year prison term and released on parole in 2018.

In August 2019, the Division of Adult Parole Operations of the California Department of Corrections and Rehabilitation (DAPO) petitioned to revoke Martin's parole, alleging that he failed to report to his parole agent upon release from custody, that he failed to register as a sex offender, and that he did not participate in electronic monitoring. As part of a compromise with the DAPO, Martin admitted the allegations regarding failure to report and failure to participate in electronic monitoring, and he was ordered to serve a 180-day jail term with credit for time served.

A month later, the trial court set aside Martin's admissions, vacated the sentence, and set a formal revocation hearing, having been notified that the case should have been governed by section 3000.08, subdivision (h). That provision provides that, for certain parolees, a parole violation means that the parolee will be sent back to prison, with the

Board of Parole Hearings responsible for determining future parole consideration. It is undisputed that section 3000.08, subdivision (h) applies to Martin.[1]

Following a contested revocation hearing, the trial court found that Martin violated parole by failing to report to his parole agent upon release from custody. Martin was ordered to return to prison.

## II. DISCUSSION

Martin contends on appeal, as he did in trial court, that the United States Supreme Court's decision in *Haymond* entitles him to have a jury determine whether he violated parole beyond a reasonable doubt. We disagree.

We begin by discussing *Haymond*, followed by this court's decision in *Schaffer*.

### A. Haymond

*Haymond* considered the right to a jury determination in the context of a federal statute, under which a "judge *must* impose an additional prison term of at least five years" if the judge "finds by a preponderance of the evidence that a defendant on supervised release committed one of several enumerated offenses." (*Haymond, supra,* 139 S.Ct. at

---

[1] In full, section 3000.08, subdivision (h) provides: "Notwithstanding any other law, if Section 3000.1 or paragraph (4) of subdivision (b) of Section 3000 applies to a person who is on parole and the court determines that the person has committed a violation of law or violated his or her conditions of parole, the person on parole shall be remanded to the custody of the Department of Corrections and Rehabilitation and the jurisdiction of the Board of Parole Hearings for the purpose of future parole consideration." (See also Cal. Code Regs., tit. 15, § 2275.) Section 3000, subdivision (b)(4) applies to Martin because of his conviction under section 288, subdivision (b)(1). (See § 3000, subd. (b)(4)(A).) Accordingly, section 3000.08, subdivision (h) governs his case.

p. 2374.)  One such offense was possession of child pornography, which the defendant was found by the judge to have committed.  (*Ibid.*)

A plurality of four justices held that the statute violated the defendant's Fifth and Sixth Amendment rights because "a jury must find any facts that trigger a *new* mandatory minimum prison term."  (*Haymond*, *supra*, 139 S.Ct. at p. 2380 (plur. opn. of Gorsuch, J.).)  In doing so, it relied on a line of cases beginning with *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), which held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" "[o]ther than the fact of a prior conviction" "must be submitted to a jury, and proved beyond a reasonable doubt."  (*Id.* at p. 490, cited in *Haymond*, *supra*, at p. 2377; see also *Haymond*, at p. 2379, fn. 4 [holding that the federal statute at issue rendered the defendant's sentence "unconstitutional in violation of *Alleyne v. United States* [(2013) 570 U.S. 99]"].)

In a concurring opinion joined by no other justices, Justice Breyer began by stating that he "agree[d] with much of the *dissent*" and "would not transplant the *Apprendi* line of cases to the supervised-release context."  (*Haymond*, *supra*, 139 S.Ct. at p. 2385 (conc. opn. of Breyer, J.), italics added.)  Nevertheless, he believed that the statute at issue was unconstitutional because the combination of three features that that statute possessed led him "to think it [was] less like ordinary revocation and more like punishment for a new offense, to which the jury right would typically attach."  (*Id.* at p. 2386.)  The three features were that the statute (1) "applies only when a defendant commits a discrete set of federal criminal offenses," (2) "takes away the judge's discretion to decide whether

4

violation of a condition of supervised release should result in imprisonment and for how long," and (3) "limits the judge's discretion in a particular manner: by imposing a mandatory minimum term of imprisonment of 'not less than 5 years' upon a judge's finding that a defendant has 'commit[ted] any' listed 'criminal offense.'" (*Ibid.*) It was the combination of these features, Justice Breyer twice stated, that made the statute unconstitutional. (*Ibid.*)

In a dissent joined by three other justices, Justice Alito stated that the federal system of supervised release "is not fundamentally different" from "the old federal parole system" and "therefore should not be treated any differently for Sixth Amendment purposes." (*Haymond*, *supra*, 139 S.Ct. at p. 2391 (dis. opn. of Alito, J.); see also Horner, Haymond*'s Riddles: Supervised Release, the Jury Trial Right, and the Government's Path Forward* (2020) 57 Am. Crim. L.Rev. 275, 279 [noting that "[f]ederal supervised release began in 1984 with the enactment of the Sentencing Reform Act" and that "[p]reviously, the federal government used a typical parole system"].) "Once this is understood," Justice Alito wrote, "it follows that the procedures that must be followed at a supervised-release revocation proceeding are the same that had to be followed at a parole revocation proceeding, and these were settled long ago. At a parole revocation hearing, the fundamental requisites of due process had to be observed, but a parolee did not have a right to a jury trial. [Citations.] Neither the Confrontation Clause nor the formal rules of evidence had to be followed. [Citations.] Due process did not require proof beyond a reasonable doubt as is necessary at trial, [citations]; and the

Double Jeopardy Clause did not apply [citation]." (*Haymond*, at p. 2391 (dis. opn. of Alito, J.).) Importantly, Justice Breyer's concurrence endorsed this view, and the plurality opinion rejected it. (*Id.* at pp. 2385 (conc. opn. of Breyer, J.) ["I agree with much of the dissent, in particular that the role of the judge in a supervised-release proceeding is consistent with traditional parole."], 2382 (plur. opn. of Gorsuch J.) ["In this case," the "structural difference" between parole and supervised release "bears constitutional consequences."].)

"When there is no majority opinion, the narrower holding controls." (*Panetti v. Quarterman* (2007) 551 U.S. 930, 949.) For *Haymond*, the narrower holding is the one articulated by Justice Breyer. (See, e.g., *United States v. Seighman* (3rd Cir. 2020) 966 F.3d 237, 242.)

B. Schaffer

In *Schaffer*, the defendant was originally convicted and sentenced to a three-year prison term for failure to register as a sex offender. (*Schaffer*, *supra*, 53 Cal.App.5th 500 at p. 503.) He was released on parole on the condition that he wear a monitoring device and charge it at least twice daily. (*Id.* at pp. 504-505.) The DAPO petitioned to revoke the defendant's parole, alleging that he had violated the terms of his parole by (among other things) failing to keep his monitoring device charged. (*Id.* at p. 506.) Following a parole revocation hearing, the trial court found that the defendant violated parole by failing to keep his monitoring device charged and ordered him to serve 180 days in jail. (*Id.* at p. 505.)

*Schaffer* held that *Haymond* did not entitle the defendant to have a jury determine beyond a reasonable doubt whether he violated parole. (*Schaffer*, *supra*, 53 CalApp.5th at pp. 507-513.) It applied the narrower holding of Justice Breyer's concurring opinion to conclude that a parole revocation for failure to keep a monitoring device charged "[does] not present the concern . . . of bypassing a criminal defendant's federal constitutional jury trial right for a *new criminal offense*." (*Id.* at p. 511.) The defendant, *Schaffer* noted, was not being sentenced for a new criminal offense, but rather was sentenced for violating one of his parole conditions. (*Ibid.*) Moreover, under the provisions applicable to the defendant, his jail sentence "was limited to 180 days, or the balance of his four-year parole period, whichever term ended earlier." (*Ibid.*) Accordingly, neither the defendant's "maximum exposure" nor his "minimum exposure" to incarceration had changed. (*Id.* at p. 512.)

C. *Applying* Haymond *and* Schaffer *Here*

Martin's contention that he is constitutionally entitled to have a jury decide whether he violated his parole beyond a reasonable doubt fails for the same reason we held in *Schaffer*. Martin's failure to report to his parole agent following his release was plainly an example of what Justice Breyer referred to as the "'breach of trust'" associated with the failure to follow the conditions of his release (*Haymond*, *supra*, 139 S.Ct. at p. 2386 (conc. opn. of Breyer, J.)). It not only did not bear the hallmarks of a new criminal prosecution, it was not even itself a criminal offense, as was the child pornography offense at issue in *Haymond*. The parole violation therefore lacked the "combination" of

7

features that would have made the violation look "less like ordinary revocation and more like punishment for a new offense, to which the jury right would typically attach." (*Haymond*, *supra*, 139 S.Ct. at p. 2386 (conc. opn. of Breyer, J.); see *Schaffer*, *supra*, 53 Cal.App.5th at p. 510.) It therefore fails to fall under the ambit of the controlling *Haymond* holding.

For standard parole violations that do not bear the hallmarks of a new criminal prosecution, a majority of the justices in *Haymond* (the four dissenting justices plus Justice Breyer) indicated that parolees have no jury right. That is, the dissent in *Haymond* stated that, under the system of federal parole in place before the 1984 Sentencing Reform Act, there was no right to have a jury apply a beyond a reasonable doubt standard in parole revocation hearings. (*Haymond*, *supra*, 139 S.Ct. at p. 2391 (dis. opn. of Alito, J.).) Because the current federal system of supervised release was "not fundamentally different" from that pre-1984 parole system, it "should not be treated any differently for Sixth Amendment purposes," in the dissent's view. (*Ibid.*; see *id.* at p. 2385 (conc. opn. of Breyer, J.) [indicating *Apprendi* should not be transplanted into parole or supervised release].)

The divergence between the plurality and the dissent in *Haymond* focused on the fact that a term of supervised release does not "replace a portion of the defendant's prison term" but rather "encourage[s] rehabilitation *after* the completion" of that prison term. (*Haymond*, *supra*, 139 S.Ct. at p. 2382 (plur. opn. of Gorsuch, J.); see *id.* at p. 2388 (dis. opn. of Alito, J.).) The plurality saw the feature as "bear[ing] constitutional

consequences" (*Id.* at p. 2382 (plur. opn. of Gorsuch, J.)), but the dissent viewed it as "purely formal" (*id.* at p. 2388 (dis. opn. of Alito, J.)). To the four dissenting justices, this feature "should have no constitutional consequences," which is why supervised release "should not be treated any differently" from the pre-1984 federal parole system "for Sixth Amendment purposes." (*Id.* at pp. 2388, 2391 (dis. opn. of Alito, J.).) Justice Breyer concurred in this view. (*Id.* at p. 2385 (conc. opn. of Breyer, J.) ["the role of the judge in a supervised-release proceeding is consistent with traditional parole"].)

To the plurality, this feature mattered because only a violation of supervised release could "expose a defendant to an additional mandatory minimum prison term well *beyond* that authorized by the jury's verdict." (*Haymond*, *supra*, 139 S.Ct. at p. 2382 (conc. opn. of Gorsuch, J.); see also *ibid.* [noting that "probation violations generally exposed a defendant only to the *remaining* prison term authorized for his crime of conviction"].) The dissent disagreed, taking issue with the premise that the punishment authorized by a jury's verdict does not also include punishment for parole or supervised release violations: "When a jury finds a federal defendant guilty of violating a particular criminal statute, the maximum period of confinement authorized is the maximum term of imprisonment *plus the maximum term of supervised release*," which in *Haymond* was life. (*Id.* at pp. 2390, fn. 4, 2391 (dis. opn. of Alito, J.), italics added.) "If a prisoner does not end up spending this *full* period in confinement, that is because service of part of the period is excused due to satisfactory conduct during the period of supervised release." (*Id.* at p. 2391 (dis opn. of Alito, J.), italics added.) Accordingly, to the dissenting

9

justices and Justice Breyer, the initial conviction included the possibility that a violation of supervised release could lead to prison time exceeding that of the initially authorized criminal term, so a jury right did not attach to revocation hearings.  (*Ibid.*; see *id.* at pp. 2385-2386 (conc. opn. of Breyer, J.).)

California's current parole system possesses the same feature the justices focused on in *Haymond* and thus would likely be treated the same.  Like federal supervised release, this state's parole system is currently premised on a period of *additional* supervision following a *completed* prison term.  (See *In re Dannenberg* (2005) 34 Cal.4th 1061, 1078 [under the determinate sentencing law, "[t]he offender must serve [the] entire term, less applicable sentence credits, within prison walls, but then must be released for a further period of supervised parole"].)  Additionally, both California's parole system and federal supervised release are meant to "encourage rehabilitation" (*Haymond*, *supra*, 139 S.Ct. at p. 2382 (plur. opn. of Gorsuch, J.)).  (See *In re Roberts* (2005) 36 Cal.4th 575, 589-590 ["[T]he objective of parole is, through the provision of supervision and counseling, to assist in the parolee's transition from imprisonment to discharge and reintegration into society."].)[2]  Thus, to the extent these features are determinative,

---

[2]  In the past, California's parole system was similar to the old federal parole system in that parole meant early release from prison.  (See *In re Application of Peterson* (1939) 14 Cal.2d 82, 85 [noting that, although "[t]he word 'parole' was originally a military term," it "has come to signify the release of a prisoner prior to expiration of his term of imprisonment conditioned upon his continuing good behavior during the remainder of the term"].)  But under the Determinate Sentencing Act enacted by the Legislature in 1977, most felons "'must be released upon *expiration* of his "term" less good-time credits, with parole acting simply as a variable period of supervision after the

10

California's current parole system and federal supervised release are indistinguishable under *Haymond*.[3]

D. *Martin's Greater Legal Exposure*

We realize that the parole provisions governing Martin's case are different from those that applied in *Schaffer*, and that the differences are significant. For instance, as we have noted, the defendant in *Schaffer* faced only a 180-day jail term. (*Schaffer*, *supra*, 53 Cal.App.5th at p. 504.) That term was further limited by the fact that, under section 3000, subdivision (b)(6)(A), once four years had passed since the defendant's initial parole date, he would be released, even if he had not fully served the 180-day jail term by that point. (*Id.* at p. 511, citing § 3000, subd. (b)(6) ["Upon successful completion of parole, or at the end of the maximum statutory period of parole specific for the inmate under [section 3000, subdivisions (b)(1)-(4)], whichever is earlier, the inmate shall be discharged from custody."].)

Here, section 3000.08, subdivision (h) states only that a parolee falling under it shall be returned to prison, with the Board of Parole Hearings responsible for considering future parole eligibility; it does not expressly limit the length of commitment that an individual like Martin may have to ultimately serve. Moreover, although Martin also appears to be entitled to be released at the end of his statutory parole period, that does

---

end of the term. Parole is no longer service of the term.'" (*People v. Jefferson* (1999) 21 Cal.4th 86, 95, citing secondary authority.)

[3] Indeed, Martin asks that we treat California's modern parole system as akin to federal supervised release under *Haymond*.

him little good for at least one of three reasons: (1) his statutory parole period is 20.5 years (§ 3000, subd. (b)(4)(A)); (2) that period may be extended "for good cause" (*ibid.*); and (3) the "notwithstanding" proviso of section 3000.08, subdivision (h) arguably means the statutory period stated in section 3000, subd. (b)(4)(A) no longer applies at all.[4] What this means is that, unlike the defendant in *Schaffer*, there is no express guarantee that Martin will ever be released from prison.

This does not mean, however, that *Haymond* provides the relief he seeks here, as both rationales articulated above are unaffected by this distinction. Martin's parole revocation was not premised on a criminal offense, and thus Justice Breyer's narrower holding does not extend to this case. Additionally, a majority of the justices in *Haymond* rejected the notion that parolees such as Martin have a jury right at a parole revocation hearing for conduct that constitutes breach of the trust granted to him during parole (failure to report), rather than one that appears similar to punishment for a new criminal offense. This is true even though, as Martin emphasizes, it is possible he may spend more time in prison than what was statutorily authorized for his underlying offense. But under the majority view in *Haymond*, for constitutional purposes, the initial criminal conviction authorizes not only the maximum term of imprisonment for the crime but also authorizes the maximum term of supervised release or parole. (See *Haymond*, *supra*, 139

---

[4] We need not determine what effect the "notwithstanding" proviso in section 3000.08, subdivision (h) has on section 3000, subdivision (b)(4)(A) here. Neither section 3000.08, subdivision (h) nor section 3000, subdivision (b)(4)(A) statutorily requires release from custody by a certain date.

S.Ct. at p. 2391 (dis. opn. of Alito, J.); see also *People v. Nuckles* (2013) 56 Cal.4th 601, 608 ["'the length of time an offender may remain on parole or may be incarcerated for a parole violation is measured by the statutory provisions setting the maximum parole period'"], cited in *Schaffer*, *supra*, 53 Cal.App.5th at p. 511.)[5]

Accordingly, we conclude that Martin is not entitled to have a jury make findings using the beyond a reasonable doubt standard under *Haymond*, despite the possibility he faces a lengthy prison sentence for his parole violation.

III.  DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

RAPHAEL _____

J.

We concur:

MCKINSTER _____

Acting P. J.

SLOUGH _____

J.

_____

[5]  If Martin's sentence becomes unduly long, he remains able to challenge his sentence under the United States and California Constitutions' prohibitions against cruel and unusual punishment, but that issue is not before us.  (See, e.g., *In re Dannenberg*, *supra*, 34 Cal.4th at p. 1071 ["Of course, no inmate may be imposed beyond a period that is *constitutionally proportionate* to the commitment offense or offenses."]; *In re Rodriguez* (1975) 14 Cal.3d 639, 656 [holding, under pre-determinate-sentencing-law, that serving 22 years of an indeterminate sentence for lewd and lascivious act on a child constituted cruel and unusual punishment under the California Constitution on the record before it]; cf. *Haymond*, *supra*, 139 S.Ct. at 2390, fn. 4 (dis. opn. of Alito, J.) ["If the Constitution restricts the length of additional imprisonment that may be imposed based on a violation of supervised release, the relevant provision is the Eighth Amendment, not the Sixth."].)