# United States Court of Appeals
## For the First Circuit

No. 18-1356

UNITED STATES OF AMERICA,

Appellee,

v.

SETH J. BLEWITT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Selya, and Boudin,
Circuit Judges.

Leslie W. O'Brien on brief for appellant.
Halsey B. Frank, United States Attorney, and Benjamin M. Block, Assistant U.S. Attorney, on brief for appellee.

April 5, 2019

**SELYA**, **Circuit Judge**.  Defendant-appellant Seth J. Blewitt, who stands convicted of bank robbery, Hobbs Act robbery, and a related firearms offense, challenges his sentence.  He argues that the sentencing court acted in contravention of the Supreme Court's opinion in Dean v. United States, 137 S. Ct. 1170, 1178 (2017), and in the bargain, engaged in impermissible gender stereotyping.  Concluding, as we do, that the appellant's arguments contain more cry than wool, we affirm.

## I. BACKGROUND

Since this appeal follows a guilty plea, we draw the relevant facts mainly from the change-of-plea colloquy, the presentence investigation report (PSI Report), and the sentencing transcript.  See United States v. Rentas-Muñiz, 887 F.3d 1, 2 (1st Cir. 2018); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).  But because one of the appellant's claims of sentencing error is inextricably intertwined with the sentencing of his accomplice (his then-wife, Cara Blewitt), we add certain undisputed facts relating to her sentencing.

On May 28, 2017, the appellant, with his physiognomy obscured by a winter hat and sunglasses, entered a bank in Bangor, Maine.  After telling the teller that he was "actually robbing [her]," he proceeded to do just that.  In carrying out the heist, he neither threatened the teller nor displayed a weapon.

Absconding with $500, the appellant joined Cara Blewitt in their getaway vehicle.

This scene was reprised the next day, when the appellant robbed a discount variety store. On that occasion, though, the appellant was armed with a sawed-off shotgun. Cara Blewitt again drove the getaway car.

Shortly after the second robbery, the police identified the Blewitts as the robbers. Warrants were issued, and the couple was arrested during a traffic stop. Several shotgun shells were found on the appellant's person and in the Blewitts' car. A further search of the vehicle revealed $300 in cash, a Remington .22 long rifle, and hundreds of rounds of ammunition. Moreover, a forensic examination of the appellant's cell phone disclosed multiple internet searches related to robbery. These included: "Hard up for cash? Rob a Dollar Store," "How nine out of every ten muggers get away with it," and "Robbery: What is the best way to rob a store?"

In due course, a federal grand jury sitting in the District of Maine returned an indictment against the appellant. The indictment charged him in three counts: bank robbery in violation of 18 U.S.C. § 2113(a) (count 1); interference with commerce by robbery in violation of 18 U.S.C. § 1951 (count 2); and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (count 3). The

appellant initially maintained his innocence but, on November 30, 2017, reversed his field and pleaded guilty to all three counts of the indictment. There was no plea agreement.

When prepared, the PSI Report recommended a guideline sentencing range (GSR) for counts 1 and 2, as a group, of 37 to 46 months. By statute, count 3 required a mandatory minimum sentence of 84 months to run consecutively to any sentence imposed on the grouped counts (counts 1 and 2). See 18 U.S.C. § 924(c)(1)(A)(ii).

Cara Blewitt was prosecuted separately and the case against her followed a somewhat different course. She admitted her involvement in the robberies shortly after her arrest, waived indictment, and was charged in an information. While the information charged her with the same two robbery offenses with which her then-husband was charged, it did not charge her with a firearms offense. She pleaded guilty to both counts of the information.

Cara Blewitt's sentencing hearing was held on March 26, 2018. The district court expressed concern about the potential disparity in the sentences that she and the appellant faced. The court questioned why the government had chosen not to bring identical charges against both spouses, suggesting that the government's charging decisions had been influenced by assumptions about the gender roles of the defendants. The government responded that it did not believe it had sufficient evidence to charge Cara

Blewitt with the firearms offense. The court was not satisfied: it noted that the probation department had recommended a minor role reduction for Cara Blewitt, see USSG §3B1.2(b), and wondered why the government had not opposed that reduction, again suggesting that the government's decision was premised on gender stereotyping. The government rejoined that Cara Blewitt was less culpable than the other participant. Despite its reservations, the court followed the probation department's recommendations, calculated Cara Blewitt's GSR to be 46 to 57 months,[1] and sentenced her to a downwardly variant 33-month term of immurement.

The district court convened the appellant's sentencing hearing approximately two weeks after Cara Blewitt's sentencing. The court adopted the guideline calculations limned in the PSI Report and set the appellant's GSR for the grouped counts at 37 to 46 months. It then remarked the 84-month consecutive sentence mandated with respect to the firearms count. After again voicing its concern with the disparity between Cara Blewitt's recently imposed sentence and the appellant's prospective sentence, the court suggested that "typical gender roles" may have influenced the government's charging decisions. The court went on to sentence the appellant to a downwardly variant 24-month term of immurement

---

[1] As calculated, Cara Blewitt's GSR for the grouped counts exceeded the appellant's GSR for those counts. The reasons for this discrepancy are not relevant here and, in all events, no one has questioned any of the district court's guideline calculations.

on the grouped counts, followed by a consecutive 84-month term of immurement on the firearms count — a total of 108 months of incarceration. This timely appeal ensued.

## II. ANALYSIS

In this venue, the appellant advances two claims of error. First, he submits that the district court committed procedural error in failing to appreciate that it had discretion to consider the mandatory sentence on the firearms count when formulating the sentence for the grouped counts. Second, he submits that the district court impermissibly engaged in gender stereotyping when formulating his sentence and, thus, transgressed his constitutional right to equal protection. We examine these claims separately.

### A. **The Asserted Dean Error.**

The appellant's first claim of error hinges on his allegation that the district court determined his sentence on the grouped counts based on a "mistaken belief" that it could not take into account the mandatory minimum sentence that it would have to impose on the firearms count. This is a claim of procedural error, and we review claims of procedural error in sentencing appeals for abuse of discretion.[2] See Gall v. United States, 552 U.S. 38, 46

---

[2] Although the record reflects some basis for questioning whether this claim of error was properly preserved, the government has adopted the position that our review is for abuse of discretion. We take this concession at face value and apply the

- 6 -

(2007); United States v. Torres, 541 F.3d 48, 51 (1st Cir. 2008). "Within this rubric, we assay the district court's factfinding for clear error and afford de novo consideration to its interpretation and application of the sentencing guidelines." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013).

The appellant rests this procedural challenge on a single statement of the sentencing court: "Congress has mandated that after I calculate the underlying sentence, I must impose an 84-month sentence if someone goes and brandishes a gun." This remark, the appellant says, is a telltale sign that the court committed the same procedural error that the Supreme Court condemned in Dean. We do not agree.

Dean, like this case, involved a sentencing proceeding at which the defendant was to be sentenced both for predicate offenses that carried no mandatory minimum and for firearms offenses that each carried a mandatory minimum. There, as here, the mandatory minimum sentence had to be imposed to run consecutively to the predicate-offense sentence. See Dean, 137 S. Ct. at 1174-75. The defendant asked the sentencing court to take his mandatory sentence into account when fashioning his sentence

---

abuse-of-discretion standard. See United States v. Encarnación-Ruiz, 787 F.3d 581, 586 (1st Cir. 2015) ("When the government fails to request plain error review, we, and many of our sister circuits, review the claim under the standard of review that is applied when the issue is properly preserved below.").

on the predicate-offense counts and to impose a one-day sentence on those counts. See id. at 1175. The district court responded that even though the mandatory minimum sentence plus one day would be "more than sufficient," it did not think that it could sentence the defendant to one day for the predicate offenses simply because the defendant was subject to a lengthy mandatory minimum sentence for the firearms offenses. Id. The Eighth Circuit affirmed the resulting sentence. See United States v. Dean, 810 F.3d 521, 533 (8th Cir. 2015).

The Supreme Court granted certiorari and vacated the defendant's sentence, emphasizing that "[s]entencing courts have long enjoyed discretion in the sort of information they may consider when setting an appropriate sentence." Dean, 137 S. Ct. at 1175. Given the breadth of this discretion, the Court concluded that nothing in section 924(c) should be read to "restrict[] the authority conferred on sentencing courts . . . to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." Id. at 1176-77. It follows that for a sentencing court to engage in the conduct condemned in Dean, it must have "erroneously believed it had to 'ignore the fact that the defendant will serve the mandatory minimum[] imposed' under section 924(c) when calculating a just sentence" for other offenses. United States v. Vallellanes-Rosa, 904 F.3d 125, 128

(1st Cir. 2018) (alteration in original) (quoting <u>Dean</u>, 137 S. Ct. at 1174).

The statement identified by the appellant — "Congress has mandated that after I calculate the underlying sentence, I must impose an 84-month sentence if someone goes and brandishes a gun" — is merely a statement of fact. It says what it means and means what it says. It does not show, by any stretch of even the most lively imagination, that the court below labored under any misapprehension when sentencing the appellant on the grouped counts.[3] This conclusion is bolstered by the fact that nothing in the sentencing transcript offers the slightest indication that the district court either was unaware of <u>Dean</u> or believed that it could not consider the mandatory minimum sentence for the firearms count when determining the sentence for the grouped counts. Indeed, the holding in <u>Dean</u> could hardly have escaped the district court's notice: a discussion of that holding was featured prominently in the PSI Report and the decision in <u>Dean</u> was highlighted by the government at sentencing. To cinch the matter, the court below — unlike the sentencing court in <u>Dean</u> — gave no hint that it wished

---

[3] The most logical interpretation of the district court's reference to calculating the underlying sentence is as an acknowledgment that the court was following the usual praxis with respect to the grouped counts, calculating the GSR and then applying the sentencing factors delineated in 18 U.S.C. § 3553(a). <u>See</u>, <u>e.g.</u>, <u>Peugh</u> v. <u>United States</u>, 569 U.S. 530, 536 (2013); Gall, 552 U.S. at 49-50; <u>Rita</u> v. <u>United States</u>, 551 U.S. 338, 347-48 (2007).

to limit the appellant's total sentence to something near the mandatory minimum sentence but thought it could not do so.

That ends this aspect of the matter. In the absence of anything resembling a Dean error, we reject the appellant's first claim of error.

## B. The Gender Stereotyping Claim.

This brings us to the appellant's claim that the sentencing court violated his right to equal protection by impermissibly considering his gender. Because the appellant did not raise this claim of error below, our review is limited to plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Plain error is a formidable standard of review, which requires that an appellant demonstrate: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id.

Inasmuch as the appellant challenges an action by the federal government, his right to equal protection is grounded in the Due Process Clause of the Fifth Amendment. See U.S. Const. amend. V; see also González-Maldonado v. MMM Healthcare, Inc., 693 F.3d 244, 247 n.2 (1st Cir. 2012) (explaining that "the Due Process Clause of the Fifth Amendment is treated as containing an equal protection component that binds the federal government in the same

way that the Equal Protection Clause [of the Fourteenth Amendment] binds the states"). Our "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." Carrasco v. Sec'y of HEW, 628 F.2d 624, 628 n.5 (1st Cir. 1980) (quoting Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n.2 (1975)). Refined to bare essence, the Constitution's guarantee of equal protection "mean[s] that 'all persons similarly situated should be treated alike.'" Pagán v. Calderón, 448 F.3d 16, 34 (1st Cir. 2006) (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)).

Here, the appellant argues that due to his gender, the district court treated him more harshly than his similarly situated accomplice when calculating their respective sentences. Specifically, he points to the court's comment that, "one of the factors that troubles me about the case is that the roles in the robbery . . . are generally consistent with typical gender roles." The court added that, "[i]t's an unusual male who is going to push his girlfriend or wife out of a car and say, you go in and rob a store or bank. The more typical situation would be that the male would go in and the female would play the role of get-away driver." From these remarks, the appellant surmises that the court impermissibly considered his gender as a factor in the sentencing calculus.

- 11 -

In mounting this claim, the appellant relies primarily on United States v. Maples, 501 F.2d 985 (4th Cir. 1974). Maples, however, is a horse of an entirely different hue. There, a man and a woman entered a bank and perpetrated an armed robbery. They pleaded guilty to identical charges. See id. at 985-86. The trial judge sentenced the man to serve fifteen years and the woman to serve ten years, after stating (with respect to the woman's sentence): "I just don't believe in punishing women who participated in a crime with the men on the same basis as a man. . . . [B]ecause of your age and the fact that you are a woman, the Court will not incarcerate you for quite as long as I did your co-defendant." Id. at 986. The male defendant appealed, and the Fourth Circuit vacated his sentence. See id. at 987. The court explained that "[i]t is manifest from the statement of the district judge, in sentencing [the female defendant], that at least a part of the leniency shown her vis-a-vis her codefendants, was the fact that she was a woman." Id. The court concluded that "the factor of sex [is] an impermissible one to justify a disparity in sentences." Id.

We have no quarrel with the decision in Maples. Here, by contrast, the appellant and Cara Blewitt were not similarly situated. Most notably, the appellant was convicted of a firearms offense (a violation of 18 U.S.C. § 924(c)), resulting in an 84-month mandatory minimum sentence. Cara Blewitt was not charged

- 12 -

with any such crime.   In addition, Cara Blewitt qualified for a mitigating role adjustment (as a minor participant in the second robbery), while the appellant never even requested such an adjustment.

We add, moreover, that the district court at no time indicated an intent to sentence one defendant more harshly or more leniently based on gender.   To the contrary, the record makes manifest that the court was concerned about the looming disparity between the two participants' sentences and was openly critical of the government's charging decisions.   In the end, the court attempted to make the sentences more equal, giving the appellant a sentence that was 13 months below the bottom of his GSR precisely because of concerns about disparity.   The court added that if the appellant had been acting alone and disparity had not been a concern, it would not have hesitated to impose a stiffer sentence.

The sentencing court's use of a downward variance to mitigate perceived disparity was well within its discretion.   After all, avoiding unwarranted disparities in sentencing among similarly situated defendants is "a salient consideration in the fashioning of a criminal sentence."   United States v. Nuñez, 840 F.3d 1, 7 (1st Cir. 2016).

To say more would be to paint the lily.   The appellant has failed to make a plausible showing of any violation of his right to equal protection, and plain error is plainly absent.

## III. CONCLUSION

We need go no further.  For the reasons elucidated above, the appellant's sentence is

**Affirmed.**