**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2759
_____

UNITED STATES OF AMERICA

v.

KEENAN GIBSON,

Appellant

_____

On Appeal from the United States District Court for the
District of Delaware
(District Court No. 1:16-cr-00046-001)
District Court Judge: Richard G. Andrews

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 7, 2022

(Filed: June 21, 2022)

Before:  AMBRO, RENDELL, and FUENTES, *Circuit Judges*.
_____

O P I N I O N*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Keenan Gibson appeals his conviction and sentence for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2), possession of heroin with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C), and possession of a firearm in furtherance of drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). He raises two claims of error related to the evidence presented at trial—the District Court erred in (1) concluding that a defense witness, Andre Strother, could assert the Fifth Amendment privilege against self-incrimination, and (2) permitting the Government to introduce certain testimony from police officers involved in Gibson's arrest—and a third concerning his sentencing—(3) the District Court misapprehended its discretion when fashioning his sentences for his first two counts. Because we discern no error in the District Court's evidentiary rulings, we will affirm Gibson's conviction. We, however, will not affirm his sentence. On the record before us, we cannot conclude whether the District Court erred during sentencing, so we will vacate his sentence and remand for resentencing.

I.

In March 2016, the Wilmington Police Department deployed its Crisis Management Tactical Team (the "Team") to execute a search warrant at 2211 North Washington Street in Wilmington, Delaware. During the search, officers encountered Gibson, the only person in the apartment, and found a Ruger firearm and drugs, among other things, in the apartment. Gibson was arrested and, several weeks later, indicted by a federal grand jury on three counts: (1) possession of a firearm by a felon in violation of

2

18 U.S.C. § 922(g)(1) and § 924(a)(2); (2) possession of a controlled substance with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(c); and (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).[1]

The District Court conducted Gibson's initial trial a few years later. During the trial, the jury heard, among other things, evidence that another individual, Andre Strother, purchased the Ruger recovered by the police, this firearm was not reported stolen, and it was possible Strother still owned and possessed this firearm. The jury ultimately could not reach a verdict, so the District Court declared a mistrial and scheduled a second trial in June 2019.

Before the second trial, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") interviewed Strother about his purchase and possession of the Ruger firearm. Strother admitted that he (1) purchased the firearm, (2) used drugs when he purchased it although he did not use drugs at the time of the search, (3) had bought drugs from Gibson at some point in the past, and (4) had been staying at Gibson's apartment near the time of the search. The Government disclosed the report memorializing this interview to Gibson, and, before the second trial, at Gibson's request, Strother was served a subpoena to appear and testify.

---

[1] The Government superseded the indictment in May 2019 without materially changing the charges.

The day after the second trial began, Strother informed the District Court that he intended to assert his Fifth Amendment privilege in response to questions about either his drug use or his ownership of the Ruger firearm. After Gibson challenged whether such an assertion would be valid, the District Court permitted Gibson and the Government to examine Strother outside the presence of the jury. During this examination, Strother declined to answer most questions, invoking the privilege against self-incrimination. The District Court determined that Strother validly invoked the privilege when questioned about his drug use and the firearm. Because Strother could not offer any relevant testimony outside of these two topics, the Court excused him from testifying.

Gibson's second trial proceeded in two phases. During this first phase, which concerned his counts for possession of heroin with the intent to distribute and possession of a firearm in furtherance of a drug trafficking crime, the jury, among other things heard testimony from officers explaining the execution of the search warrant at Gibson's residence, including the use of the Team. The jury found Gibson guilty of both counts. The District Court then conducted the second phase, which pertained to the count for possession of a firearm by a felon. The jury found Gibson guilty of this count as well.

The District Court later sentenced Gibson. He requested that the Court impose two concurrent one-day sentences for his two counts of possession of a firearm by a felon and possession of heroin with intent to distribute and a consecutive five-year mandatory minimum sentence under 18 U.S.C. § 924(c)(1)(A)(i) for possession of a firearm in furtherance of a drug trafficking crime. The District Court declined to grant this requested variance. It sentenced Gibson to two concurrent 51-month terms of

4

imprisonment for his first two counts and one consecutive 60-month term of imprisonment for his third count, but it noted that it would have sentenced Gibson to a shorter term of imprisonment if the 60-month consecutive sentence was not required by statute.

Gibson timely appealed his conviction and sentence.

## II.[2]

### A. *Strother's Invocation of the Fifth Amendment Privilege Against Self-Incrimination*

We review the District Court's application of the Fifth Amendment privilege against self-incrimination de novo. *United States v. Chabot*, 793 F.3d 338, 342 (3d Cir. 2015). The Fifth Amendment privilege protects individuals when "compelled to produce self-incriminating, testimonial communication[s]." *Id.* (alteration in original) (internal quotation marks and citation omitted). It covers "more than just [giving] evidence which may lead to [a] criminal conviction[;] [its protections] extend[] to information which would furnish a link in the chain of evidence that could lead to a prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *United States v. Morton*, 993 F.3d 198, 203 (3d Cir. 2021) (internal quotation marks and citations omitted). Once a witness "makes a prima facie invocation of the privilege," a court will force the witness to testify only if it is "perfectly clear from careful consideration of all the circumstances in the case that the witness is mistaken, and

_____

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

5

that the answer[s] *cannot possibly* have such tendency to incriminate." *Id.* (emphasis in original) (internal quotation marks and citations omitted).

Gibson contends that the District Court erred in determining that Andre Strother, a potential defense witness, could assert the Fifth Amendment privilege against self-incrimination to avoid testifying. He largely argues that, as Strother's potential testimony would not have been incriminating, Strother had no basis to invoke the privilege. We disagree.

As the District Court recognized, Strother worried about possible prosecution for possession of a firearm by a narcotics user in violation of 18 U.S.C. § 922(g)(3). Two of this crime's elements are relevant here: the defendant (1) uses or is addicted to an illegal narcotic and (2) "thereafter knowingly possessed a firearm[.]" *United States v. Cheeseman*, 600 F.3d 270, 281 (3d Cir. 2010). Accordingly, if Strother's testimony could tend to show that he used drugs or that he knowingly possessed a firearm and thereby "possibly tend to incriminate" him, then the District Court properly refrained from compelling him to testify. *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 371 (3d Cir. 2004).

Gibson submits that Strother would have testified "as to what happened as far as [his] bringing the gun into [the] house [where it was recovered], and where he left it, and what he did afterwards to try to recover it[.]" Appellant's Opening Br. 16 (alterations in original) (quoting App. 219). Testimony along these lines could have incriminated Strother because it would tend to show that he knowingly possessed a firearm, the Ruger found in Gibson's apartment. Moreover, had Strother testified as proffered, the

6

Government's cross-examination could have elicited further incriminating testimony concerning whether he purchased ammunition and accessories for the Ruger.

Any testimony that suggested Strother used drugs would have been similarly incriminating. Gibson insists that Strother would face limited questions about his past drug use because these matters would have been collateral and therefore inadmissible. Not so. Evidence that tended to connect Gibson to drugs or drug dealing at the time of his arrest would have been relevant to his prosecution for drug-trafficking crimes. *See* Fed. R. Evid. 401; *United States v. Bobb*, 471 F.3d 491, 496 (3d Cir. 2006) (setting out the elements of a violation of 18 U.S.C. § 924(c)(1)(A)); *United States v. Lacy*, 446 F.3d 448, 454 (3d Cir. 2006) (listing the elements of a violation of 21 U.S.C. § 841(a)(1)). Had Strother testified that he went to Gibson's apartment and left the Ruger firearm there, the Government had a good-faith basis to ask Strother why he was in the apartment, why he brought the gun, and whether his presence in the apartment was related to drugs.

Even without these questions, the Government could have asked Strother about his drug use as impeachment evidence as it pertained to his perception of the events about which he would have testified. *Jarrett v. United States*, 822 F.2d 1438, 1446 (7th Cir. 1987). Gibson contends that such questions could not incriminate Strother because Strother had denied using drugs at that time in his ATF interview. But his argument misses the point. When a witness invokes the privilege, the trial court must focus on the responses the posed questions could elicit rather than what the witness's past comments suggest he might say. *See Hoffmann v. United States*, 341 U.S. 479, 486-87 (1951) ("To

7

sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."). Even though a denial in response to whether Strother used drugs when he left the Ruger at Gibson's apartment would not incriminate him, an admission would.

In short, no matter what Gibson expected Strother to say, the Government could have elicited potentially incriminating testimony from Strother had he testified. Thus, the District Court did not err in upholding Strother's assertion of the privilege against self-incrimination.

### B. Testimony Concerning the Execution of the Search Warrant

Next, Gibson claims that the District Court erred by allowing the Government to elicit testimony that "effectively told the jury that Mr. Gibson had a prior felony conviction, and moreover, left the impression that Mr. Gibson was a violent person who possessed weapons." Appellant's Opening Br. 32-33. He objects to the testimony of three police officers—Officer Dolinger, Officer Barnes, and Detective Wilkers—concerning the execution of the search warrant at Gibson's apartment, in particular the Wilmington Police Department's deployment of the Team. Ordinarily, we review a district court's decision to admit or exclude evidence for abuse of discretion. *United States v. Desu*, 23 F.4th 224, 233 (3d Cir. 2022). Yet, because Gibson did not object to the challenged testimony during his trial, we review for plain error. *United States v. Christie*, 624 F.3d 558, 567 (3d Cir. 2010). "Plain error exists when an error is clear at

8

the time it was made and it affected the defendant's substantial rights." *United States v. Seighman*, 966 F.3d 237, 240 (3d Cir. 2020).

Here, the District Court committed no such error. In general "relevant evidence . . . is admissible unless the [Federal Rules of Evidence] provide otherwise." *Huddleston v. United States*, 485 U.S. 681, 687 (1988). Under Federal Rule of Evidence 403, "[d]istrict courts may exclude [relevant] evidence 'if its probative value is substantially outweighed by a danger of . . . unfair prejudice.'" *United States v. Heatherly*, 985 F.3d 254, 265 (3d Cir. 2021) (third alteration in original) (quoting Fed. R. Evid. 403). The challenged testimony about the execution of the search warrant was relevant and had probative value. *See United States v. Lacerda*, 958 F.3d 196, 208 (3d Cir. 2020) (noting than "an officer who is familiar with an investigation or was personally involved may tell the story of that investigation—how the investigation began, who was involved, and what techniques were used"). So the District Court erred only if the officers' testimony was substantially more unfairly prejudicial than it was probative. It was not.

True, the challenged testimony presented a risk of unfair prejudice to Gibson to the extent that it could lead the jury to convict Gibson because he was a convicted felon and violent. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997). Even so, this risk was too remote to outweigh the testimony's probative value. For example, take Officer Dolinger's testimony, the testimony Gibson views as the most unfairly prejudicial. Officer Dolinger testified that he helped execute the warrant as a member of the Team, and that the Team generally executes "high-risk warrants [for] subjects that have had

9

felonies, or may have committed a felony crime, or involving weapons, hostage situations, things like that." App. 241-42. While the jurors could theoretically infer from this testimony that the Team executed the search warrant because Gibson had been convicted of a felony in the past, few, if any, were likely to do so, as it would require them to ignore an alternative explanation supported by facts they already knew: the Team executed the warrant because Gibson was charged with a felony that involved a weapon. Because this testimony as well as the remaining challenged testimony presented a limited risk of unfair prejudice, we cannot conclude that the District Court committed plain error by failing to exclude it.

C. *The District Court's Appreciation of Its Sentencing Discretion*

With respect to his sentence, Gibson raises only one issue on appeal: whether the District Court mistakenly believed that it was required to fashion a sentence for his two 18 U.S.C. § 924(c) predicate offenses—possession of a firearm by a felon and possession of heroin with intent to distribute—without considering the mandatory consecutive term of imprisonment he would receive for possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A). On appeal, we consider only if the sentence imposed is "reasonable." *Gall v. United States*, 552 U.S. 38, 46 (2007). We conduct this review in "two stages," focusing first on procedural reasonableness and then on substantive reasonableness. *United States v. Handerhan*, 739 F.3d 114, 119 (3d Cir. 2014); *United States v. Merced*, 603 F.3d 203, 214 (3d Cir. 2010). If we detect a procedural error during the first stage, we end our review and "remand the case for re-

10

sentencing." *Merced*, 603 F.3d at 214. Here, we review a claim of procedural error.[3] *See United States v. Blewitt*, 920 F.3d 118, 121-22 (1st Cir. 2019).

In *Dean v. United States*, 137 S. Ct. 1170 (2017), the Supreme Court addressed district courts' discretion in crafting sentences for section 924(c) predicate offenses. It held that a district court may "consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count," observing that the statute does not "prevent a district court from imposing a 30-year mandatory minimum sentence under [it] and a one-day sentence for the predicate violent or drug trafficking crime, provided those terms run one after the other." *Id.* at 1176-77. That said, it did not hold that a district court must consider the mandatory minimum sentence when imposing a sentence for section 924(c) predicate offenses, only that it may do so. *See United States v. Padilla-Galarza*, 990 F.3d 60, 88 (1st Cir. 2021).

Following *Dean*, courts have recognized that a district court errs if it believes it has no discretion to consider the section 924(c) mandatory minimum sentence when fashioning sentences for the defendant's predicate offenses. *See, e.g.*, *Blewitt*, 920 F.3d at 122-23; *United States v. Gomez*, 905 F.3d 347, 355 (5th Cir. 2018). Gibson contends that the District Court committed this error during sentencing. The transcript provides

---

[3] The parties dispute whether we should review for plain error. Although we ordinarily review for plain error where, as here, the defendant fails to object to the alleged procedural error at sentencing, *United States v. Aguirre-Miron*, 988 F.3d 683, 688 (3d Cir. 2021), we find that Gibson's request for a variance preserved his claim of error for appeal, *United States v. Brown*, 935 F.3d 43, 46-47 (2d Cir. 2019). We therefore will review the District Court's sentencing for abuse of discretion. *Handerhan*, 739 F.3d at 119.

11

some support for his claim.  In particular, when determining his sentence, the District

Court stated:

> So that's all to say that's the reason why the guidelines
> suggest sending you to prison for about four to five years.
> And I say that the guidelines suggest because *I think the way*
> *that I'm supposed to be looking at your sentence is to figure*
> *out what the sentence should be for Counts 1 and 2, not*
> *taking into account the fact that I have to add on five years*
> *for Count 3.  That's my understanding of what the Court of*
> *Appeals has said district judges are supposed to do.*  So
> looking at it like that, you know, your offense deserves a
> sentence somewhere in that range.

App. 900 (emphasis added).  Although it declined to grant a downward variance, it

explained to Gibson:

> I am going to take the government's recommendation that the
> appropriate place in the range is 51 months.  And you know,
> I'm going to have to sentence you to the 60 months to follow.
> *I'm not particularly sure that if there wasn't the minimum or,*
> *in fact, I'm pretty sure that if there wasn't the minimum*
> *mandatory, I'd give you less time.*  But there is, and the law
> tells me I have no choice.

App. 902 (emphasis added).

Though Gibson contends these excerpts reveal that the District Court did not

believe that it had discretion to consider his five-year mandatory minimum sentence for

his third count when fashioning sentences for his first two counts, we are not so sure.

When the District Court explained that it believed it could not take the mandatory

minimum sentence for Count 3 into account, it may have been discussing how the

Guidelines range is calculated for Counts 1 and 2, not how it was determining the

sentences for those counts.  *See Blewitt*, 920 F.3d at 123 n.3 (describing "the usual praxis

12

with respect to grouped counts" as "calculating the [Guidelines range] and then applying the sentencing factors delineated in 18 U.S.C. § 3553(a)").

Even so, we cannot determine whether the District Court misapprehended its discretion. Although we normally assume that the sentencing court "understands all the available sentencing options," we hesitate to do so "where the [court's] sentencing remarks create ambiguity as to whether [it] correctly understood an available sentencing option." *United States v. Preacely*, 628 F.3d 72, 80 (2d Cir. 2010). In such circumstances, we may elect to remand for clarification or vacate the sentence and remand for resentencing. *Brown*, 935 F.3d at 47-49. We believe the case before us calls for the latter path, so we will vacate Gibson's sentence and remand for resentencing.[4] *See id.* at 49 (electing to vacate the District Court's sentence and remand for resentencing in light of the uncertainty regarding its understanding of *Dean*).

### III.

For these reasons, we affirm Gibson's conviction yet vacate the District Court's sentence and remand for further proceedings consistent with this opinion.

---

[4] The District Court may reimpose its original sentence if it, in fact, understood and considered its discretion under *Dean* when imposing this sentence. Gibson, of course, would have the right to appeal his new sentence if he believes the Court nevertheless erred during resentencing.